**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

JAMES THOMAS FARMER, JR.,
D/B/A Jim's Guns & Whatever

               Plaintiff,

     v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS, AND EXPLOSIVES,

               Defendant.

Case No.  3:05-cv-287

Judge Walter Herbert Rice
Magistrate Judge Sharon L. Ovington

---

**DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT**

---

Now comes Defendant, Bureau of Alcohol, Tobacco, Firearms and Explosives, by and through counsel and pursuant to Civil Rule 12(b)(1) or in the alternative Civil Rule 56, and moves this Court to dismiss Plaintiff's Complaint due to a lack of subject matter jurisdiction or to enter summary judgment in its favor. In support of this Motion, Defendant relies upon the Administrative Record and Hearing Transcript filed in this case.  The grounds for this Motion are set forth in the accompanying Memorandum of Law.

              Respectfully submitted,

              GREGORY G. LOCKHART
              United States Attorney


              s/Gregory P. Dunsky
              GREGORY P. DUNSKY (0009098)
              Assistant United States Attorney
              Attorney for Defendant
              602 Federal Building
              200 West Second Street
              Dayton, Ohio 45402
              (937) 225-2910
              Fax: (937) 225-2568
              Gregory.Dunsky @usdoj.gov

<u>**MEMORANDUM**</u>

Plaintiff James Farmer, Jr. brings this action against the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for review of ATF's decision to revoke his Federal firearms license. The Gun Control Act of 1968, 18 U.S.C. §§ 921 et. Seq. ("GCA"), specifically 18 U.S.C. § 923(f)(3), governs this Court's review of ATF's decision.

## I. BACKGROUND

### A. STATEMENT OF FACTS – MOTION TO DISMISS

ATF issued a Federal firearms license to Farmer in 1978 authorizing him to engage in the business as a dealer, including pawnbroker, in firearms other than destructive devices, at his premises at 1148 Richfield Center Road, Dayton, Ohio 45430. (Government Exhibit B, hereinafter "GX"-B.) Farmer has been the sole proprietor of the licensed business since that time.

On August 3, 2004, ATF issued a Notice of Revocation of License, ATF Form 4500, to Farmer. (GX 2.) ATF advised Farmer that he had the right to a hearing to review the revocation of his license. (GX 2.) Farmer timely requested a hearing. (GX 4A and 4B.) ATF initially advised Farmer that the hearing would be held on January 12, 2005 in Columbus, Ohio. (GX 7, 8, 9.) The hearing was postponed until April 21, 2005. Farmer was advised that could be represented by counsel and present evidence at the hearing. (GX 7, 8, 9, 10, and 11.) ATF held the hearing on April 21, 2005 at which time Farmer appeared and presented evidence. (GX-C.) At the end of the hearing, Hearing Officer Desiree Winger advised Farmer that if he received a Final Notice of Revocation of License, he could file a request in the Federal District Court where he conducted business, under 18 U.S.C. § 923(f)(3) for a de novo review and that the request had to be submitted within 60 days of his receipt of the Notice. (GX-C; Transcript of 4/21/2005 license hearing (GX-A), hereinafter "TR" 222, 223.) Hearing Officer Winger issued a report concluding that Farmer had committed willful violations of the GCA and related regulations and recommended revocation of Farmer's

Federal firearms license.  (GX-C.).  ATF Director of Industry Operations ("DIO"), Columbus Field

Division, issued ATF Form 4501, Final Notice of Revocation of Firearms License ("Final Notice"),

to Farmer on June 16, 2005.  (GX-D.)  The Final Notice was received by Farmer on June 24, 2005,

as evidenced by US Postal Service Mail receipt PS Form 3811 stamped June 24, 2005.  (GX-D.)

Electronic mail ("E-mail") from Farmer to ATF Columbus Field Division dated July 28, 2005

acknowledged receipt of the Final Notice on June 24, 2005.  (GX-F and Complaint, Paragraph 8.)

Farmer's E-mail message indicated he wanted to file his Petition for *de novo* review of license

revocation with ATF.  On August 3, 2005, ATF notified Farmer by E-mail from Inspector David

Counts that the Petition for Judicial Review under 18 U.S.C. § 923(f)(3) was not to be filed with

ATF and included a copy of 18 U.S.C. § 923(f)(3) notifying Farmer to file his Petition with the

United States district court within 60 days of the notice of decision.  (GX-G.)  On August 17, 2005,

ATF sent a letter to Farmer via Certified Mail containing the same information.  (GX-H).  Farmer

received this letter on August 18.  (GX-H; Complaint, Paragraph 8.)  Farmer filed his complaint in

the United States District Court, Southern District of Ohio on August 25, 2005, two days after the

sixtieth day for filing under  18 U.S.C. § 923(f)(3).  (Complaint)

## B.     STATEMENT OF FACTS – MOTION FOR SUMMARY JUDGMENT

The GCA and its implementing regulations contain various record keeping requirements for

firearm's dealers. The general record keeping provisions of the GCA are located at 18 U.S.C. §

923(g) and its implementing regulations at 27 C.F.R. Part 478 (formerly Part 178).  Of these

requirements, three are particularly relevant to this case. First, dealers must ensure that a Firearm's

Transaction Record, ATF Form 4473, is properly completed in order to record identifying

information about gun purchasers, to prohibit gun transfers to persons prohibited from possession

of firearms, and to facilitate tracing guns that are involved in crimes. A prospective transferee of a

firearm must complete Section A of the form to disclose various identifying information[1] and to answer questions that inform the dealer whether he can legally transfer the firearm to the prospective transferee.[2] The dealer must then complete Sections B, C, and D to provide further details about the firearm(s) being transferred, the dealer's National Instant Criminal Background Check System ("NICS")[3] check on the transferee, and the transferee's identifying documentation. See generally 18 U.S.C. § 923(g)(1)(A); 18 U.S.C. § 922(m); 27 C.F.R. § 478.124.

Second, each licensed firearm dealer must maintain a bound book identifying each firearm placed into and taken out of its inventory. This book is referred to as the "Acquisition and Disposition Bound Book," "A&D Bound Book," or "A&D Record." Acquisition entries in the A&D Record must identify the gun by manufacturer, model, serial number, type, and caliber or gauge, identify the date the licensee receives the gun, and identify the person (by name and address or FFL Number) who transferred the gun to the dealer. The licensee must record these entries by the close of the business day following the acquisition.[4] Disposition entries must include the date the gun was transferred out of the licensee's inventory, the identity of the person to whom the gun was transferred, and the address of that person or the Form 4473 serial number associated with the

---

[1] The transferee must identify his full name, residence address, place of birth, height, weight, sex, race, birth date, county and state of residence, country of citizenship, and, if applicable, the INS- issued alien number or admission number. (See ATF F 4473, 10-2001 version;  27 C.F.R. § 478.124(c)(1).)

[2] The transferee answers these questions in Section A, Certification of Transferee. (See ATF F 4473, 10-2001 version; See 27 C.F.R. § 478.124(c)(1).) Under the GCA, it is unlawful for dealers to transfer guns to persons who they know or have reasonable cause to believe fall within various categories, such as those under indictment for or convicted of a crime punishable by imprisonment for more than  one year, illegal aliens, and those convicted of a misdemeanor crime of domestic violence. See 18 U.S.C.  § 922(d)(1)‒(9); 27 C.F.R. § 478.99(c).

[3] See 18 U.S.C.  § 922(t); 27 C.F.R. § 478.11 (definitions); 27 C.F.R. § 478.102.

[4] The licensee may record the acquisition within 7 days of receipt if it has a commercial record containing all information required by 27 C.F.R. § 478.125(e). See 27 C.F.R. § 478.125(g).

transfer.[5]  The licensee must record these entries no later than 7 days after the disposition.  See generally 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.125(e) & (g).

ATF inspectors conduct application inspections during the application process to ensure that the licensee understands the record keeping requirements under the GCA.  Compliance inspections are completed to review the licensee's records and inventory to determine whether the licensee is complying with the GCA's requirements.  (TR 14, 15, 73, 95, 97, 110, 113, 114, 117.)  The compliance inspections that ATF conducted on Farmer which are relevant to this case are as follows:

## C.    MARCH 1995 COMPLIANCE INSPECTION AT JIM'S GUNS & WHATEVER.

In March 1995, Inspector William Schmarr conducted an unannounced compliance inspection at Jim's Guns & Whatever.  (TR 74.)  James Thomas Farmer, Jr. ("Farmer") was present during the inspection.  (TR 80.)  ATF had received referrals from the Ohio Bureau of Criminal Identification and Investigation ("BCI&I") regarding the failure of Farmer to properly complete Brady Checks.[6]  (TR 73, 74, 75.)  Inspector Schmarr reviewed 60 of approximately 400 ATF Forms 4473 and Farmer's A&D Record covering the time period from March 1994 to March 1995.  (TR 76, 82, 83, 86, 87.)  The review revealed violations of the GCA and its implementing regulations, for which ATF issued a Report of Violations ("ROV") to Farmer.  (GX 16, pp. 1-6; TR 88, 89, 90.) ATF also issued a warning letter to Farmer.  (GX 17; TR 91, 92.)

---

[5]  Transfers to other federal firearm's licensees require the federal license number be placed in the disposition entry in lieu of the Form 4473 serial number.  See 27 C.F.R. § 478.125(e).

[6]  18 U.S.C.  § 922(s); 27 C.F.R. § 178.102

**Farmer Failed to Follow the Brady Handgun Violence Prevention Act by Failing to Furnish ATF Forms 5300.35 to the Chief Law Enforcement Officer (CLEO) Prior to Transfer of Handguns to Non-licensees.**

The compliance inspection revealed errors in handling the ATF Forms 5300.35, Statement of Intent to Obtain a Handgun.  (TR 77, 78, 79.)  The licensee failed to properly conduct Brady checks for each sale of a handgun to a non-licensee (GX 14; TR Id.)  Inspector Schmarr explained the proper Brady procedures and ATF prepared a letter for Farmer explaining the proper Brady procedures.  (GX  13; TR 80, 81.)  Because Farmer failed to properly provide the ATF Form 5300.35 to the Chief Law Enforcement Officer ("CLEO"), ATF cited him for violating 27 C.F.R. § 178.102(3).[7]  (GX 16; TR 88, 89.)

**Farmer Failed to Properly Complete Firearms Transaction Records ATF Forms 4473 for Transfer of Firearm to Corporation.**

Farmer failed to have the individual representative of a corporation complete ATF Form 4473.  (GX 14; TR 83, 84.)  Because Farmer failed to have the Forms 4473 properly completed, ATF cited him for violating 27 C.F.R. 178.124(c).  (GX 16; TR 89.)

ATF recorded these violations in the ROV, ATF Form 5030.5, and issued it to Farmer, who signed the ROV as Owner on April 18, 1995.  (GX 16.)  The Report of Violations contained instructions for corrective action that corresponded to each of the cited violations. Inspector Schmarr discussed the violations with Farmer and explained the required corrective action.  (GX 16; TR 88, 89, 90, 91.)

---

[7] The Homeland Security Act of 2002, Pub. L. No. 107-296, section 1111 (Nov. 25, 2002) divided the Bureau of Alcohol, Tobacco and Firearms into two separate agencies.  With respect to the enforcement of the Federal firearms laws, Title XI, subtitle B, section 1111 of the Act transferred the authority to enforce these laws to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Department of Justice, January 24, 2003.  This transfer required the reorganization of Title 27, Code of Federal Regulations.   Part 178 of Title 27, Code of Federal Regulations, was recodified as Part 478.  The authority vested in the Secretary of Treasury is now vested in the United States Attorney General.  Id. at sections 1111(a)(4) and 1111(c)(1).

After the inspection was completed, ATF issued a warning letter to Farmer reviewing the violations and warning that repeated violations would be considered willful and could result in license revocation. (GX 17; TR 91, 92.)

**D.    JULY 1996 COMPLIANCE INSPECTION AT JIM'S GUNS & WHATEVER.**

In July 1996, ATF Inspector Marilyn Trombatore conducted a compliance inspection of Jim's Guns & Whatever from July 25 to August 14, 1996. (TR 96, 97.) This inspection was unannounced to ensure Farmer was complying with the GCA and regulations. (TR 95.) Inspector Trombatore inspected the ATF Forms 4473, the A&D Record and the Brady Handgun Forms, ATF Forms 5300.35, for the time period March 1995 to July 1996. (TR 98.) The inspection revealed violations, including violations on the ATF Form 5300.35. (GX 19; TR 101.)

**Farmer Failed to Ensure Non-Licensed Transferees and Licensee Properly Completed Firearms Transaction Records, ATF Forms 4473.**

Inspector Trombatore reviewed approximately 400 ATF Forms 4473 and found errors or omissions on 16 of the Forms in Sections A and/or B. (GX 18; TR 98, 99.) Inspector Trombatore reviewed the errors with the licensee and directed remedial action. (TR 100, 107.) In sum, each of the 16 Forms 4473 contain errors or omissions where the transferee did not provide all of the required information. (GXs 18 and 21; TR Id.) ATF noted that Farmer violated 27 C.F.R. § 178.124(c). (GX 21; TR 107.)

**Farmer Failed to Timely Enter Dispositions of Firearms in the A&D Record and Re-Entered Two Firearms as Acquisitions in the A&D Record**

Inspector Trombatore counted a sampling of Farmer's physical inventory of firearms. (TR 102, 103.) She found three firearms had been sold without being timely recorded as dispositions in the A&D Record. (GX 20, p.3; TR 103, 104.) In addition, two firearms had each been entered twice as acquisitions in the A&D Record. (GX 20, p. 3-4; TR 104.) ATF noted that Farmer violated 27 C.F.R. § 178.125(e). (GX 21; TR 107.)

**Farmer Failed to Properly Complete ATF Forms 5300.35, Statement of Intent to Obtain a Handgun**

Inspector Trombatore examined ATF Forms 5300.35 and determined that Farmer had failed to sign and/or date items 10 and 11 on the Forms.  (GXs 19 and 21; TR 100, 101.)  ATF noted that Farmer violated 27 C.F.R. § 178.130(b)(2).  (GX 21; TR 107.)

**Farmer Accepted a Collector of Curios and Relics License (Type 03) for the Transfer of a Firearm not Classified as a Curio or Relic in 27 C.F.R. § 478.11.**

Inspector Trombatore observed that Farmer had accepted a copy of a Curio and Relic license to transfer a firearm not classified as a curio or relic.  Farmer was cautioned not to accept such license in lieu of a Brady check on the purchaser where the transferred firearm is not classified as a curio or relic.  (GX 21; TR 105, 106.)

Inspector Trombatore did not prepare a formal Report of Violations, ATF Form 5030.5, but she did prepare a Remarks document summarizing the violations she found at Farmer's premises during her inspection and the remedial action directed.  (GX 21; TR 107.)  Additionally, she did not conduct a formal regulation review with the licensee because she found Farmer very knowledgeable about GCA laws and regulations.  (TR 107, 108.)

**E.    MAY 2001 COMPLIANCE INSPECTION AT JIM'S GUNS & WHATEVER**

In May 2001, ATF Inspector David Counts conducted a compliance inspection of Farmer's premises from May 29 – June 5, 2001, with two additional trips to the licensed premises to attempt to reconcile the firearms inventory with Farmer.  (TR 111, 112.)  This was an unannounced inspection to ensure that Farmer was complying with a Demand Letter from ATF ordering him to report used firearms received in inventory.[8]  (TR 114, 115.)  The inspection covered the period from January 1, 2000 to May 29, 2001.  (TR 116)  Inspector Counts dealt primarily with Farmer and inspected the ATF Forms 4473, the A&D record and the Report of Multiple Sale or Other

---

[8]  18 U.S.C.  § 923(g)(5)(A); 27 C.F.R. § 478.126.

Disposition of Pistols and Revolvers, ATF Forms 3310.4. (TR 116, 117.)  The inspection revealed numerous violations of the GCA and its regulations, including specific violations that Farmer repeated from the previous compliance inspection.

**Farmer Failed to Timely Record Firearms Dispositions in the A&D Record**

Due to the licensee's prior problems with timely recording dispositions in the A&D Record, Inspector Counts conducted a full physical inventory.  (TR 118.)  Inspector Counts actually conducted three inventories at Farmer's premises. (TR Id.)  He determined there were 997 firearms in Farmer's inventory but there were 1244 open dispositions in the A&D Record. (GX 22; TR 120.)  Open dispositions indicate the firearm should be in inventory because there is no record in the A&D Record of disposition. (TR 119.)  The inspector selected sixty-five (65) firearms to trace from the A&D Record open dispositions to Farmer's physical inventory. (GX 22, 23, 24; TR 122, 123.)  Of the sixty-five (65) firearms, Inspector Counts could not initially locate twenty-four (24) of the open disposition firearms in Farmer's physical inventory. (GXs 23 and 24; TR 122.)  The licensee subsequently located three (3) of the "missing" firearms on June 6, 2001 and eighteen (18) of the twenty-four (24) firearms were verified as having been sold by examination of ATF Forms 4473. (TR 124, 125, 126.)  The remaining three (3) firearms were located by the licensee between the second inventory by Inspector Counts on June 6, 2001 and his return for a third inventory on July 10, 2001.  (GXs 22, 23 and 24; TR Id.)

Inspector Counts also determined that none of the firearms sold between January 1, 2001 and May 16, 2001 had been timely entered as dispositions in the A&D Record by Farmer.  This represented 153 firearms that the licensee had failed to timely log out of his A&D Record.  (GX 24; TR Id.)  The inspector directed the licensee to account for all of the firearms disposed of, but not timely entered as dispositions in the A&D Record (TR Id.)  When he returned for a third inventory on July 10, 2001, Farmer was unable to account for twenty-seven (27) firearms in his inventory and

had to file ATF Form 3310.11, Federal Firearms Licensee Theft/Loss Report,[9] for those firearms. (GX 25; TR 126, 127, 128.)  ATF cited Farmer for violating 27 C.F.R. § 478.125(e).  (GX 29; TR 153, 154.)  Failing to timely record dispositions in the A&D Record was a repeat violation from the July 1996 compliance inspection.  (Compare GX 21 with GX 29.)

### Farmer Failed to Properly Complete Acquisition Information in the A&D Record

Inspector Counts reviewed Farmer's A&D Record and determined that in many instances, the licensee failed to record the name and/or address or Federal firearms license number of persons or entities from whom the firearms were received.[10]  Farmer was using abbreviations in lieu of the proper entries.  (GX 24; TR 130.)  Inspector Counts directed Farmer to begin using the required acquisition entries and to write legibly in the record. (GX 29; TR 130, 131, 132, 133.)  ATF cited Farmer for violating 27 C.F.R. § 478.125(e).  (GX 29; TR 154.)  Errors in the acquisition entries of the A&D Record were repeat violations from the July 1996 compliance inspection.  (Compare GX 21 with GX 29.)

---

[9]  18 U.S.C.  § 923(g)(6); 27 C.F.R. § 478.39a.

[10]  27 C.F.R.§ 478.125(e).

**Farmer Failed to Ensure Non-Licensed Transferees and Licensee Properly Completed Firearms Transaction Records, ATF Forms 4473 and Improperly Removed  Instructions from Forms 4473**

Inspector Counts reviewed approximately 115 ATF Forms 4473 of the 573 forms executed by the licensee from January 1, 2000 to May 30, 2001 and determined that nine (9) of the forms had errors or omissions, some multiple errors per form.  (GX 26; TR 134, 135, 136, 137, 138, 189, 140.) On three Forms 4473, e.g.,Yearick, Keller and Kellet, the prospective transferees failed to answer the question, "[H]ave you ever been adjudicated mentally defective or have you been committed to a mental institution?"  Farmer should have stopped these transactions and not transferred the firearms.  (GX 26; TR 135, 136.)  However, the firearms were transferred without the Farmer determining whether these persons were disabled under 18 U.S.C.  § 922(g)(4) by their certification on ATF Form 4473.   Furthermore, fourteen (14) Forms 4473 out of twenty-five (25) additional Forms 4473 examined failed to record the date that NICS was contacted as required by  27 C.F.R. § 478.102(a). (GX 26, pp. 2-4; TR 138, 139, 140.) Moreover, Farmer was tearing off the ATF Form 4473 instructions in violation of directions contained on the Form 4473.[11]  (GX 26. p.2; TR 142, 143.)   ATF cited Farmer for violating 27 C.F.R. § 478.124(c).   (GX 29; TR 154.)   Errors in execution of ATF Forms 4473 were repeat violations from the March 1995 and July 1996 compliance inspections.  (Compare GXs 16 and 21 with GX 29.)

---

[11]  27 C.F.R. § 478.21  Forms prescribed.
(a) The Director is authorized to prescribe all forms required by this part. All of the information called for in each form shall be furnished as indicated by the headings on the form and the instructions on or pertaining to the form. In addition, information called for in each form shall be furnished as required by this part.

**Farmer Failed to Properly File ATF Forms 4473 in Alphabetical, Chronological or Numerical Order.[12]**

Inspector Counts observed that none of the Forms 4473 from January 1, 2001 to May 30, 2001 and some of the forms from 2000 were filed in any order.  (GXs 24 and 27; TR 140, 141.) ATF cited Farmer for violating 27 C.F.R. 478.124(b).  (GX 29; TR 154.)

**Farmer Failed to Prepare and Report to ATF Form 3310.4, Record of Multiple Sale or Other Disposition of Pistols and Revolvers**

On five (5) occasions, Farmer transferred multiple handguns to the same person within five (5) business days and yet failed to complete ATF Form 3310.4.[13]  (GXs 26 and 28; TR 135, 148, 149.)  Farmer completed the Form as directed.  (GXs 28 and 29; TR 152.)  Farmer was aware of the requirement to file multiple handgun sale reports because he had done so for some of the multiple sale transactions.  (TR 149, 150.)  ATF cited Farmer for violating 27 C.F.R. § 478.126a.  (GX 29, p. 2; TR 154.)

**Farmer Failed to Properly Complete Firearms Transaction Records, ATF Forms 4473 for Transfer of Firearm to Corporation.**

Farmer failed to obtain the required written statement for transfer of firearms to a corporation.[14]  (TR 143, 144.)  ATF cited Farmer for violating 27 C.F.R. § 478.124(g).  (GX 29, p.3;

---

[12]  27 C.F.R. § 478.124 Firearms transaction record.
(b) A licensed manufacturer, licensed importer, or licensed dealer shall retain in alphabetical (by name of purchaser), chronological (by date of disposition), or numerical (by transaction serial number) order, and as a part of the required records, each Form 4473 obtained in the course of transferring custody of the firearms.

[13]  18 U.S.C. § 923(g)(3)(A); 27 C.F.R. 478.126a.

[14]  27 C.F.R. § 478.124 Firearms transaction record.
(g) A licensee who sells or otherwise disposes of a firearm to a nonlicensee who is other than an individual, shall obtain from the transferee the information required by this section from an individual authorized to act on behalf of the transferee. In addition, the licensee shall obtain from the individual acting on behalf of the transferee a written statement, executed under the penalties of perjury, that the firearm is being acquired for the use of and will be the property of the transferee, and showing the name and address of that transferee.

TR 154.) Failing to properly transfer a firearm to a corporation is a repeat violation from the March 1995 compliance inspection. (Compare GX 16 with GX 29, p.3.)

### Farmer Failed to Contact NICS Prior to the Transfer of Firearms

For the sale of two firearms to a corporation, Farmer failed to have the individual representative of the corporation complete ATF Form 4473. (GX 24; TR 143, 144.) Thus, the licensee did not conduct a NICS check as required on the person acquiring the firearm for the corporation. ATF cited Farmer for violating 27 C.F.R. § 478.102(a). (GX 29, p. 5; TR 154, 155.)

ATF recorded these violations in the ROV, ATF Form 5030.5, and issued it to Farmer, who signed the ROV as Owner on June 5, 2001. (GX 29.) The Report contained instructions for corrective action that corresponded to each of the cited violations and Inspector Counts discussed the violations with Farmer and explained required corrective action. (GX 29; TR 153, 154, 155.)

At the conclusion of the inspection, Inspector Counts conducted a regulation review with Farmer, explaining all required GCA laws and regulations for licensed firearms dealers. (GX 30.) Inspector Counts covered all of the GCA regulations in detail. (TR 155, 156, 157.)

After the inspection, ATF issued a warning letter to Farmer reviewing the 2001 violations and warning that repeated violations would be considered willful and could result in license revocation. (GX 31; TR 157, 158.) This was the second warning letter Farmer had received from ATF. (Compare GX 17 with GX 31.)

## F.    JANUARY 2004 COMPLIANCE INSPECTION AT JIM'S GUNS & WHATEVER

In January 2004, ATF Inspector Julie Lanter conducted a compliance inspection at Jim's Guns & Whatever from January 18-28, 2004, plus three follow-up visits in February 2004 to assist Farmer in resolving inventory discrepancies, with a final visit in March 2004 for the closing conference. (TR 13, 23, 43.) This was an unannounced inspection covering the period September 2002 to January 2004. (TR 14, 16.) Inspector Lanter dealt primarily with Farmer and inspected the

ATF Forms 4473, the A&D record and other required records.  (TR 16.)  The inspection revealed violations of the GCA and its regulations, including specific violations that Farmer repeated from prior compliance inspections.

### Farmer Failed to Record Responses Received from NICS on ATF Forms 4473

Farmer had executed approximately 1228 Forms 4473 during the inspection period and Inspector Lanter reviewed approximately 25% of those forms, e.g., 400.  (GX 36; TR 39, 40.)  On ten (10) forms, Farmer failed to record the response received from NICS, e.g., "Proceed," "Delayed," or "Denied."   (GX 36; TR 40.)   ATF cited Farmer for violating 27 C.F.R. § 478.124(c)(3)(iii).  (GX 37, p.1; TR 44.)  Failure to properly complete the ATF Forms 4473 was a repeat violation from the March 1995, July 1996 and May 2001 inspections.  (Compare GXs 16, 21 and 29 with GX 37.)

### Farmer Failed to Conduct a NICS Check Prior to Transfer of a Firearm to a Non-Licensee

In one instance, Farmer failed to conduct a NICS check prior to transfer of a firearm to a non-licensed individual, e.g., Jason Schlicher.  (GX 36; TR 40, 41, 42.)  At the hearing, Farmer admitted that he failed to do this.  (TR 188-192.)   ATF cited Farmer for violating 18 U.S.C. § 922(t)(1), 27 C.F.R. § 478.102 and 478.124(c)(3)(iii).  (GX 37, p. 1; TR 44.)  This is a repeat violation from the May 2001 inspection.  (Compare GX 29 with GX 37.)

### Farmer Failed to Properly Complete Acquisition Information in the A&D Record

Inspector Lanter reviewed Farmer's A&D Record and determined that in eleven (11) instances, Farmer failed to record the addresses of the persons from whom firearms were received.  (GX 34, p. 3; TR 34, 36.)  Farmer admitted making these errors but denied he was committing a criminal violation.  (TR 61, 62.)  ATF cited Farmer for violating 18 U.S.C. § 923(g)(1)(A) and 27

C.F.R. § 478.125(e). (GX 37 p.1; TR 44.) This is a repeat violation from the May 2001 inspection. (TR 35.) (Compare GX 29 with GX 37.)

### **Farmer Failed to Timely Record Firearms Dispositions in the A&D Record**

Due to Farmer's prior violations for not timely recording dispositions in the A&D Record, Inspector Lanter conducted a full inventory. (GX 33; TR 17,18.) Initially she determined that there were 1039 "open dispositions" in the A&D Record, indicating there should have been 1039 firearms in inventory. (TR 18, 19.) She established there were 890 firearms actually in Farmer's inventory, with seven (7) firearms on the premises, but not entered into the A&D Record. (TR 20.) The combination of seven (7) unentered firearms and 156 firearms "missing" from inventory created a 163 item discrepancy in Farmer's inventory. (GX 33; TR 21.) Eventually, according to Inspector Lanter's testimony, the discrepancies were resolved as follows:

98 firearms – found in inventory – initially missed due to the clutter of the shop and failure of Farmer to show her a safe where firearms were kept. (TR 21.)

34 firearms – not timely logged out of A&D Record as dispositions (TR 22.)[15] 23 instances – firearms logged as acquisitions twice in the A&D Record (TR 22, 23, 29, 30, 31.)

8 firearms – missing from Farmer's inventory (GX 33; TR 23, 26, 27.)

1 firearm - not logged into A&D Record, no record of Form 4473 and eventually reported missing from the inventory (TR 24, 25, 45.)

3 firearms – not timely logged as dispositions in the A&D Record - sold to other firearms dealers and recorded in commercial records (TR 25, 26.)

Farmer was cited for violating 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e). (GX 37 p. 2; TR 44, 45.) Additionally, Farmer had to file ATF Form 3310.11, Federal Firearms Licensee Theft/Loss Report, for the missing firearms. (GXs 33 and 37; TR 23, 25, 26, 28, 29.) Failure to

---

[15] GX 33 establishes 33 firearms not timely recorded as dispositions in the A&D Record, e.g., 3 firearms were transferred to other firearms dealers and not timely recorded as dispositions and 30 firearms were sold to non-licensees on ATF Forms 4473 but not timely recorded as dispositions in the A&D Record.

timely enter dispositions in the A&D Record is a repeat violation from the July 1996 and May 2001 inspections. (Compare GXs 21 and 29 with GX 37.)

### Farmer Failed to Enter a Firearm Acquisition in the A&D Record

During Inspector Lanter's inventory of the firearms on January 15, 2004 at Farmer's premises, she observed a Century Arms FN/FAL Sporter, Serial Number 9802302B549 which was not entered in the A&D Record. (TR 24, 25.) When she returned on February 28, 2004, the firearm was not on the premises, not listed in the A&D Record nor documented as sold on an ATF Form 4473. (TR 31, 32, 33, 45, 51, 52.) Farmer reported the firearm missing to ATF but denied that Inspector Lanter correctly described the firearm. (TR 48, 49, 50, 51, 52, 53, 54.) ATF cited Farmer for violating 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e). (GX 37, p.2; TR 45.) Errors in acquisition entries are repeat violations from the July 1996 and May 2001 inspections. (Compare GXs 21 and 29 with GX 37.)

### Farmer Falsely Entered Firearms Acquisitions in the A&D Record

In 23 instances, Farmer re-entered acquisitions in the A&D Record listing the firearms as acquired from himself, rather than the person from whom they were actually acquired. (TR 22, 23, 27, 28, 29, 30, 31.) These firearms had previously been entered as acquisitions and prevented an accurate inventory of the firearms. Multiple entries of the same firearm could interfere with firearms traces. Farmer was not actually the source of these firearms. (GXs 33 and 37; TR 23, 68, 69, 220, 221.) ATF cited Farmer for violating 18 U.S.C. §§ 923(g)(1)(A) and 924(a)(1) and 27 C.F.R. § 478. 125(e) and 478.128. (GX 37, p. 3; TR 45.) This is a repeat violation from the July 1996 inspection. (Compare GX 21 with GX 37.)

ATF recorded these violations in the ROV, ATF Form 5030.5, and issued it to Farmer, who signed the ROV on March 2, 2004. (GX 37; TR 44, 45, 46.) The ROV contained instructions for corrective action that corresponded to each of the cited violations. Inspector Lanter discussed the

violations with Farmer and explained required corrective action. (GX 37; TR 46.)

At the conclusion of the inspection, Inspector Lanter conducted a regulation review with the licensee, explaining all required GCA laws and regulations for licensed firearms dealers. (GX 38; TR 46, 47.)

## G.  NOTICE OF VIOLATIONS, DECISION TO REVOKE LICENSE, AND ADMINISTRATIVE HEARING

After each of the 1995, 2001 and 2004 inspections, ATF issued a ROV to Farmer that stated, "[a]n examination of your premises, reports and operations has disclosed the following violations which have been explained to you . . . . " (GXs 16, 29 and 37.)  After the 1996 inspection, ATF Inspector Trombatore explained the violations but did not issue a ROV. (GX 21.)  Farmer, owner, signed all of the ROVs. (GX 16, p. 3; GX 29, p.4; GX 37, p. 4.)

Because of the violations discovered in the January 2004 compliance inspection, ATF gave Farmer notice on August 3, 2004, that it was revoking Farmer's Federal firearms license due to willful violations of the Gun Control Act and its implementing regulations. (Notice of Revocation of License, GX 2.)  The Notice charged Farmer with 7 Counts of willful violations of the GCA. (GX 2, pp. 2-5.)  Count 7 was dismissed at the beginning of the hearing on Motion of the Government (TR 7.)  Farmer, requested a hearing pursuant to 18 U.S.C. § 923(f)(2) to review the license revocation (see GXs 4a and 4b), and the hearing was held in Columbus, Ohio on April 21, 2005. (TR p. 1.)  ATF advised Farmer that he, as licensee, could be represented at the hearing, witnesses could appear on Farmer's behalf, and relevant documentary evidence could be submitted in support of Farmer's position. (GXs 7, 8, 10 and 11.)

At the hearing, Farmer appeared as licensee. (TR 2, 3; GX-C, p. 1.)  Farmer disputed only one of the six charges.  Farmer did not dispute that the errors and omissions in Counts 1 – 4 and 6 had occurred, but argued that he did not willfully commit the violations. (TR 62, 211, 220, 224.)

Farmer disputed Count 5 on the basis that the importer of the firearm told him the serial number recorded by Inspector Lanter did not exist. (TR 48-54.) Inspector Lanter testified that if she had recorded the serial number in error, another CAI FN/FAL firearm would have been found on the premise and it was not. (TR 31-33.) Inspectors Trombatore, Counts and Lanter testified that Mr. Farmer knew the requirements of the GCA but that he stated he did not have time to keep his records up to date, especially while trying to computerize his records. (TR 27, 107, 108, 132, 133, 163.)

Hearing Officer Winger agreed with ATF's allegations of willful violations of the GCA for Counts 1-6 as cited in the Notice of Revocation. (GX-C, pp. 15-16.) Consequently, she recommended that ATF revoke the Federal firearms license issued to Farmer d/b/a Jim's Guns & Whatever (FFL No. 4-31-113-01-4E-10084). (GX-C.)

ATF's Director of Industry Operations, Columbus Field Division, reviewed the evidence, exhibits, and Hearing Officer Winger's recommendation and on June 16, 2005, revoked Farmer's Federal firearms license due to willful violations of the GCA as to Counts 1-6 in the Final Notice of Revocation. (GX-D.) On August 25, 2005, Farmer filed a Petition for De Novo Judicial Review, pursuant to 18 U.S.C. § 923(f)(3), of ATF's revocation of his Federal Firearms License. (See Petition for De Novo Judicial Review, Docket No.1.)

## II. LAW AND ARGUMENT

### A. STANDARD OF REVIEW – MOTION TO DISMISS

#### 1. This Court lacks jurisdiction over Plaintiff's Petition for De Novo Review

In a civil action, when a motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12 (b)(1) of the Federal Rules of Civil Procedure, is filed the plaintiff bears the burden of establishing the court's jurisdiction. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Madison-Hughes v. Shalala, 80 F.3d 1121, 1130 (6th Cir. 1996). The Sixth Circuit distinguishes between a "facial" attack and a "factual" attack upon a complaint under Rule 12(b)(1).

Singleton v. United States, 277 F.3d 864, 869 n.4 (6th Cir. 2002); Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).  When a party files a Rule 12(b)(1) motion and supports the motion with affidavits, testimony, or other evidentiary materials, the attack is factual, and the burden is on the plaintiff to prove subject matter jurisdiction in order to survive the motion to dismiss.  Michigan S. R.R. Co. v. Branch, 287 F.3d 568, 573 (6th Cir. 2002); Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute.  United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).  Where evidence pertaining to subject matter jurisdiction has been submitted, the court may look beyond the jurisdictional allegations of the complaint to determine if subject matter jurisdiction does in fact exist.  Ohio National Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).  Moreover, the district court can resolve factual disputes, when necessary, to resolve challenges to subject matter jurisdiction.  Madison-Hughes v. Shalala, 80 F.3d 1121, 1130 (6th Cir. 1996).

2.  **Plaintiff's petition for de novo review is barred by the limitation on action in 18 U.S.C. § 923(f)(3) and must be dismissed for lack of subject matter jurisdiction.**

Plaintiff filed his Petition for de novo review of the revocation of his Federal firearms license sixty-two days after he received the Final Notice of Revocation of Firearms License ("Final Notice").  "Everyone, even uncounseled litigants must act within the time provided by statutes and rules. (Citation omitted)."  Truitt v. County of Wayne et al., 148 F.3d 644, 647 (6th Cir. 1998).  As a general rule, most periods of limitation involving suits against the sovereign are jurisdictional.  Ohio National Life Ins. Co. v. United States, 922 F.2d 320, 324 (6th Cir. 1990).  "Accordingly, when jurisdictional facts are challenged, the party claiming jurisdiction bears the burden of demonstrating the court has jurisdiction over the subject matter. (Citation omitted).  The burden is on the plaintiff since the statute outlines the terms under which the United States has waived

-18-

sovereign immunity and thereby consented to suit." Id.  Therefore, the *res judicata* effect of a

12(b)(1) motion is limited to the jurisdictional issue and is properly reviewed under the motion to

dismiss for lack of subject matter jurisdiction.  Id.

      For review of administrative actions, ". . . a statutory provision that sets the time limit for

seeking review of an administrative order is "mandatory and jurisdictional" and "not subject to

equitable tolling." *Stone v. I.N.S.,* 514 U.S. 386, 405 . . . (1995)(internal quotations omitted)(holding

that the time period for appealing a deportation order is not tolled by the filing of a motion for

reconsideration ). . . ." Reinhart v. United States Department of Agriculture, 39 Fed. Appx. 954,

956, 2002 U.S. App. LEXIS 14018 (6th Cir. 2002, cert. denied, 2003 U.S. LEXIS 2980 (Apr. 21,

2003).  A motion to dismiss a civil action for review of the Secretary of Treasury's decision to deny

or revoke a Federal firearm license pursuant to 18 U.S.C. § 923 must be granted for lack of subject

matter jurisdiction if the petitioner fails to file suit within the sixty-day period prescribed by      18

U.S.C. § 923(f)(3).  Charles Monroe Smith d/b/a Wholesale Gun Distributor v. Joseph D. Deviney,

Regional Admin. Bureau of Alcohol Tobacco and Firearms, No. C70-620A (N.D. Ga. Sept. 14,

1979); Alvin B. Stokes v. United States of America and Rex D. Davis, Acting Director, Alcohol,

Tobacco and Firearms Division, No. 21-C-10-H (W.D. Va. Apr. 16, 1971).  Aggrieved parties in

administrative actions subject to judicial review must file petitions for review no later than the final

date specified by statute or be dismissed by the court for lack of subject matter jurisdiction.  Danko

v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor, 846 F.2d 366, 369

(6th Cir. 1988); Peel v. Secretary of Health & Human Services, 793 F.3d 1293, *4 (6th Cir. 1986).

      ATF has established that Farmer was given notice of the sixty-day filing requirement for his

petition for *de novo* judicial review at the Hearing by the Hearing Officer, by the Final Notice of

Revocation, by E-mail after his erroneous attempt to file the petition with ATF and by letter sent

certified mail, all received by Farmer prior to August 23, 2005, the final date for filing.  He filed his

petition on August 25, 2005, thus depriving the District Court of subject matter jurisdiction to review the revocation action.

3.  **Plaintiff's delinquent filing of petition for de novo review is not subject to equitable tolling**.

The Sixth Circuit has applied the rule of equitable tolling to permit certain plaintiffs to file petitions for judicial review of administrative actions out of time. Five factors are considered when determining the appropriateness of tolling a statute of limitations: "(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." Truitt v. Country of Wayne, et al., 148 F.3d 644, 648 (6th Cir. 1998); Glarner v. United States Dep't of Veterans Administration, 30 F.3d 697, 702 (6th Cir. 1994); Pearison v. Pinkerton's Incorp., 990 Fed. Appx. 811, 813, 2004 U.S. App. LEXIS 1196 (6th Cir. Jan. 23, 2004). Plaintiff's lack of diligence and neglect cannot be excused by equitable tolling. Id. ATF informed Farmer of the time limitation and location for filing no less than four times prior to the deadline for filing his petition in the District Court. Plaintiff acknowledged receiving all of ATF's communications regarding the time and place of filing his petition for *de novo* review. Farmer's failure to timely file his petition does not qualify for equitable tolling of the sixty-day deadline.