B.    **STANDARD OF REVIEW – MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When considering a motion for summary judgment, the moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323–325 (1986). The moving party need not present evidence and need only point out the lack of any genuine dispute as to material fact. Id. A fact is material if its resolution will affect the outcome of the lawsuit. Daughenbaugh v. City of Tiffin, 150 F.3d 594, 597 (6th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-movant then bears the burden of establishing the existence of elements essential to its case, which it would have to prove at trial, and may not rest upon the mere allegations or denials of the adverse nonmoving party to set forth specific facts showing a triable party's pleading. Once the moving party satisfies this burden, the burden shifts to the issue. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). It is insufficient for the nonmoving party merely to show that there is some metaphysical doubt as to the material facts. Id.

This case is an appeal of ATF's decision to revoke Farmer's firearms license. Pursuant to 18 U.S.C. § 923(f)(3), one whose license has been revoked may "[f]ile a petition with the United States district court . . . for a de novo judicial review of [the] revocation." In the judicial review, the court has the discretion to "consider any evidence submitted by the parties" regardless of whether the evidence was considered at the hearing below. 18 U.S.C. § 923(f)(3). The district court may attach the weight, if any, that it considers appropriate to ATF's factual determinations and decision. See, e.g., Stein's Inc. v. Blumenthal, 649 F.2d 463, 467 (7th Cir. 1980); Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 348 F.Supp. 2d 1299, 1307 (S.D. Ala. 2004);

Clust, Inc. d/b/a Cash to Go Pawn Shop v. Bureau of Alcohol, Tobacco, Firearms and Explosives, No. 2:04-cv-839 (S.D. Ohio July 13, 2005).

The right of de novo judicial review in the Gun Control Act does not provide a firearms dealer with an absolute right to an evidentiary hearing, but only an opportunity to present additional evidence regardless of whether that evidence was presented at the administrative level. Willingham Sports, 348 F.Supp. 2d at 1306. This evidence may come in the form of affidavit on summary judgment rather than testimony at an evidentiary hearing if no substantial credibility questions are presented. Id. (citing Stein's, 649 F.2d at 466 n.5)

When a plaintiff fails to come forward with genuine issues of material fact, it is unnecessary to hold an evidentiary hearing before ruling on a summary judgment motion. Cucchiara v. Secretary of Treasury, 652 F.2d 28, 29-30 (9th Cir. 1981); Breit & Johnson Sporting Goods v. Ashcroft, 320 F.Supp. 2d 671, 673 (N.D. Ill. 2004); 3 Bridges v. O'Neill, 216 F.Supp. 2d 655, 657 (E.D. Ky 2002). Thus, summary judgment may be appropriate upon de novo review on the basis of the administrative record when no substantial reason to receive additional evidence is present and when "material facts developed at the administrative hearing . . . are not substantially drawn into question by the party petitioning for review." 3 Bridges, 216 F. Supp. at 657 (quoting Cucchiara v. Secretary of the Treasury, 652 F.2d 28, 30 (9th Cir. 1981). Indeed, judicial economy suggests trial anew of factual matters already developed in administrative proceedings should be avoided unless substantial doubt infects the agency's findings of fact. See e.g., Steins, Inc. v. Blumenthal, 649 F.2d 463, 466 (7th Cir. 1980); Perri v. Dep't of Treas., 637 F.2d 1332, 1335 (9th Cir. 1981).

**C.   SUMMARY JUDGMENT IS REQUIRED IN THIS CASE BECAUSE THE UNDISPUTED MATERIAL FACTS SHOW THAT FARMER WILLFULLY VIOLATED THE LICENSING PROVISIONS OF THE GUN CONTROL ACT BECAUSE HE UNDERSTOOD HIS LEGAL OBLIGATIONS AND YET FAILED TO ABIDE BY THE LAW.**

Pursuant to 18 U.S.C. § 923(e), the Government may revoke a federal firearms license if the holder of the license has "willfully" violated any provisions of the GCA or its implementing rules and regulations. "The majority of circuits, including the Sixth Circuit, have consistently held that where a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA." Appalachian Resources Development Corp., d/b/a Bend of the River v. McCabe, 387 F.3d 461, 464 (6th Cir. 2004); see also 3 Bridges v. O'Neil, 216 F.Supp.2d 655, 657 (E.D. Ky 2002) ("A violation is 'willful,' within the context of federal firearms licensing cases, if a 'dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them.'") (quoting Perri v. Dep't of Treas., 637 F.2d 1332, 1336 (9th Cir. 1981).[16] Willfully does not require any proof of bad intent or evil motive. Appalachian Resources, 387 F.3d at 465; Stein's Inc. v. Blumenthal, 649 F.2d 463 (7th Cir. 1980). Rather, undisputed knowledge of the law yet failure to abide by it constitutes willfulness. Appalachian Resources, 387 F.3d 464–65. Where the licensee employees individuals to assist him in the running of the business, as in this case, the licensee is charged with the conduct and knowledge of his employees. See, e.g., Fin & Feather Sport Shop, Inc. v. United States Treasury Department, 481 F.Supp. 800, 807 (D.Neb.1979); McLemore v. United

---

[16] In Rich v. United States, 383 F.Supp. 797 (S.D. Ohio 1974), the Southern District of Ohio held that to be a "willful" violation of the GCA, the licensee's behavior had to be purposeful and intentional rather than merely negligent. Id. at 800. As Appalachian Resources makes clear in its definition of "willful," Rich's standard is not the law in the Sixth Circuit. See 3 Bridges, 216 F.Supp. 2d at 658 (rejecting Rich standard because it has no other support in the case law and the Sixth Circuit did not follow it in Al's Jewelry and Loan, Inc. v. United States, 103 F.3d 128, 1996 WL 683528 (6th Cir. 1996)). Consequently, this Court must reject the standard of willful set forth in Rich.

States Treasury Department, 317 F.Supp. 1077, 1078‑1079 (N.D. Fla. 1970). A single violation of the GCA or its implementing rules and regulations can be a basis for ATF to revoke a firearms license. See, e.g., Appalachian Resources, 387 F.3d 461, 464 (6th Cir. 2004); Breit & Johnson Sporting Goods, Inc. v. Ashcroft, 320 F.Supp.2d 671, 678 (N.D.Ill. 2004). Evidence of repeat violations, while not necessary to establish willfulness, is sufficient to establish willfulness if there is knowledge of the law's requirements. See e.g., Appalachian Resources, 387 F.3d at 464; Breit & Johnson Sporting Goods, Inc., 320 F.Supp.2d 671, 678 (N.D. Ill. 2004).

One key purpose of the Gun Control Act is "to keep firearms away from persons Congress classified as potentially irresponsible and dangerous." Barrett v. United States, 423 U.S. 212, 218 (1976). Farmer's repeated failure to ensure that Forms 4473 were properly completed along with his repeated failure to conduct NICS checks and to record NICS responses establishing whether a buyer was eligible to purchase a firearm based upon those responses, interferes with this purpose. Additionally, Farmer's inability to account for his firearms inventory creates the likelihood that potentially "irresponsible and dangerous" individuals will obtain those firearms. See, 3 Bridges v. O'Neill, 216 F. Supp.2d 655, 659 (E.D. Ky 2002).

    1.    **Farmer's Repeated Failure to Ensure Proper Completion of ATF Forms 4473 Is a Willful Violation of the GCA.**

In 1995, Inspector Schmarr reviewed the applicable record keeping requirements with James Farmer, Jr. as part of the Firearms Compliance Inspection conducted in response to a complaint from Ohio BCI&I that Farmer was failing to properly complete Brady checks. This included a specific review with Mr. Farmer of the requirements for ATF Forms 4473, the A&D Record, and the Brady checks for handgun sales. (GXs 12-17; TR 80-81.) Inspector Schmarr reviewed at least 60 Forms 4473 and noted errors in certain forms. (GX 14; TR 83.) Farmer was cited for those errors in the

ROV which the inspector discussed with Farmer (GX 16; TR 90.) and a Warning Letter was issued regarding the violations. (GX 17.)

Inspector Schmarr determined Farmer knew how to accurately and timely maintain his firearms inventory records. (TR 87, 88.) These facts indicate that Farmer was aware of the GCA's record keeping requirements and understood its obligation under the law to abide by them. See e.g., Stein's Inc. v. Blumenthal, 649 F.2d 463, 468 n.8 (7th Cir. 1980); Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 348 F.Supp. 2d 1299, 1309 (S.D. Al. 2004).

During the July 1996 inspection, Inspector Trombatore reviewed errors on 16 Forms 4473 and directed Farmer to take remedial action to correct those forms. (GX 18. TR 100.) Farmer was cited for these violations in the ROV and remedial action discussed by Inspector Trombatore. (GX 21; TR 107, 108.)

During the May 2001 compliance inspection, Inspector Counts determined that Farmer failed to ensure that transferees properly and completely prepared Forms 4473 and failed to record on fourteen (14) Forms 4473 the dates that NICS was being contacted to determine whether or not the transferees are prohibited.[17] (GX 26, p. 3-4; TR 138, 139.) Of the approximately 115 Forms 4473 that Inspector Counts examined during the compliance inspection, 9 forms had errors or omissions in Sections A, B, or D. (GX 26; TR 135, 136, 137.) Additionally, Farmer had failed to file any of the Forms 4473 executed from January 1, 2001 to May 30, 2001 and some forms from 2000, in any order. (GXs 24 and 27; TR 140, 141.) Farmer was cited on the ROV with the violations. (GX 29; TR 153, 154, 155.)

---

[17] NICS contact dates are important because a licensee can transfer a firearm without receiving a reply from NICS if three business days have elapsed from licensee's the date of contact with NICS and a "delayed" response has been received from NICS. Without the date of contact, there is no way to determine whether or not the licensee has waited the required length of time prior to transferring a firearm without having received a "proceed" response from NICS. 18 U.S.C. § 922(t)(1)(B); 27 C.F.R. § 478.102(a).

The January 2004 compliance inspection revealed that Farmer again failed to properly complete the Forms 4473. Inspector Lanter reviewed 400 forms out of 1228 forms executed during the inspection period. Farmer failed to record NICS responses of "Proceed," "Delayed" or "Denied" on 10 of the forms, but transferred the firearms. (GX 36; TR 40.) Farmer was cited for these violations on the ROV and remedial action was discussed. (GX 37; TR 45.)

When questioned at the hearing, Mr. Farmer admitted he made these record keeping errors. (TR 211, 224.) He admitted that he committed violations "in not having records up to snuff, tings slipping through the cracks, omissions of booking things out . . " (TR 211.) These repeated mistakes in completing and executing Forms 4473, despite knowledge of the law's requirements, establish Farmer's willful violation of the GCA. See, e.g., 3 Bridges, 216 F. Supp. 2d at 659; Willingham Sports, 348 F. Supp. 2d at 1308–09.

**2.    Farmer's Repeated Failure to Maintain the A&D Record and Track Its Inventory is a Willful Violation of the GCA.**

The GCA cannot keep firearms away from persons classified as "potentially irresponsible and dangerous" when a licensee cannot accurately track his inventory. Lost or stolen firearms are particularly problematic because the possessors of those firearms are unknown. For this reason, licensees must timely record in the A&D Record both acquisitions and dispositions of firearms. See 27 C.F.R. § 478.125(e) & (g). Failing to properly keep these records makes tracing firearms more difficult and compromises the accuracy of inventory. When questioned by the Hearing Officer whether he ever took a complete inventory, he admitted he had not. (TR 193.)

In this case, Farmer failed to accurately track and maintain control of his inventory. In 1995, Inspector Schmarr found no discrepancies in Farmer's firearms inventory and testified that Farmer understood how to correctly maintain the inventory. (TR 88.) In 1996, Inspector Trombatore found three (3) firearms sold by Farmer that had not been timely recorded in the A&D Record. (GX 20,

-26-

p. 3, GX 21; TR 104.) She also found 2 firearms that had each been entered twice as acquisitions in the A&D Record. (GX 20, pp. 3-4, GX 21; TR 104.)

In the 2001 compliance inspection, Inspector Counts documented continued discrepancies between Farmer's physical inventory and his A&D Record. Inspector Counts had to return to the licensee's premises two additional times to resolve inventory discrepancies. (GX 22; TR 111, 112.) Farmer failed to accurately and completely record the acquisition information for firearms in the A&D Record. (GXs 23 and 24; TR 130, 131, 132.) Farmer failed to record the name and/or address or Federal firearms license number of the persons or entities from whom the firearms were received. (Id.) Farmer failed to record any dispositions of firearms from January 1, 2001 to May 16, 2001, a total of 153 firearms, in the A&D Record. (GXs 22, 23 and 24; TR 123, 124.) After inventory and A&D Record reconciliation, the inspection disclosed twenty-seven (27) firearms were missing from Farmer's inventory. (GXs 22 and 25; TR 126, 127, 128.) These discrepancies violated 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e).

In the 2004 Compliance inspection, Inspector Lanter had to return to the licensee's premise three additional times to assist in the reconciliation of his inventory. (TR 13, 23, 43.) Farmer again failed to properly record firearm acquisition information in the A&D Record. (GX 34, p.3; TR 34, 36, 37.) Inspector Lanter determined that in eleven (11) instances, Farmer failed to record the address of the person from whom the firearm was acquired. (Id.) He failed to enter one firearm, e.g., a Century Arms FN/FAL Sporter, into the A&D Record. (TR 24, 25.) In twenty-three (23) instances, Farmer falsely stated that he was the acquisition source of the firearm, when he was not. (GXs 33 and 37; TR 22, 23, 30.) Farmer admitted making these false written statements of acquisitions in the A&D Record. (TR 68, 69, 174, 177, 220, 221.) Multiple entries of the same firearms as acquisitions in the A&D Record are repeat violations from the July 1996 inspection. (GXs 21 and 37.) Farmer again failed to timely enter seven (7) firearms found on the premises as

-27-

acquisitions in the A&D Record and thirty-three (33) dispositions in the A&D Record. (GXs 33 and 37; TR 21, 22.) At the close of the inspection, Farmer could not account for eight (8) firearms missing from his inventory and had to report those firearms to ATF as lost or stolen. (GXs 33 and 37; TR 23, 26, 27.) When questioned at the hearing, Farmer admitted he made the alleged errors in the maintenance of his inventory. (TR 197, 201.) He also admitted not conducting inventories of his firearms (apart from the ATF inventories in conjunction with the compliance inspections). (TR 193.)

These repeat violations provide a sufficient basis to establish that Farmer willfully violated the GCA because of his undisputed knowledge of the law as established in the 1995, 1996 and 2001 Compliance Inspections and the January 2004 Compliance Inspection, and his plain indifference to the law as shown by the violations. See, e.g., Appalachian Resources, 387 F.3d at 464; Cucchiara v. Secretary of the Treasury, 652 F.2d 28, 30 (9th Cir. 1981). Therefore, his license is subject to revocation.

    3.    **Farmer's Repeated Failure To Conduct NICS Checks is a Willful Violation of the GCA**

The Brady Handgun Violence Prevention Act, Pub.L. 103-159, currently codified at 18 U.S.C. § 922(t), provided for the establishment of the National Instant Criminal Background Check System ("NICS") to notify Federal firearms licensees of the information available in the system whether or not a potential firearms transferee was disabled from receiving or possessing a firearm under 18 U.S.C. § 922(g) or (n). Prior to transferring a firearm to an individual not licensed under the GCA, the dealer must query NICS and receive a "Proceed" response or wait three business days after a "Delay" response without a "Deny" response, to transfer the firearm. 18 U.S.C. § 922(t); 27 C.F.R. § 478.102. Farmer failed to conduct NICS checks for two firearms transfers during the May 2001 inspection period (GX 24, p. 1, GX 29, p.3; TR 144.) and once during the January 2004

-28-

inspection period. (GX 36; TR 40, 41.) Inspector Counts determined that Farmer had failed to conduct a NICS check on the representative of a corporation who obtained the firearms. (GX 24, p.1, GX 29, p.3; TR 144.) Inspector Counts explained how such transactions were to be handled and that NICS checks had to be conducted on all non-licensed individuals. (TR 145, 146.)

In 2004, Inspector Lanter determined that Farmer had again failed to conduct a NICS check on a non-licensed individual prior to transfer of a firearm. (GX 36; TR 40, 41.) Farmer admitted that he had failed to conduct the check and that he knew he had to perform the check. (TR 188-192.) These repeat violations provide a sufficient basis to establish that Farmer willfully violated the GCA because of his undisputed knowledge of the law as established in both the 2001 Compliance Inspection and the admission by Farmer, and his plain indifference to the law as shown by the repeat violation in 2004 Compliance Inspection. See e.g., Appalachian Resources, 387 F.3d at 464; Cucchiara v. Secretary of the Treasury, 652 F.2d. 28, 30 (9th Cir. 1981). Therefore, Farmer's license is subject to revocation.

Neither the administrative record (AR) nor the complaint contain any denial of the violations, with the exception of identification of the firearm Inspector Lanter saw on the first day of the inspection and that was missing thereafter, e.g., the Century Arms FN/FAL Sporter. (TR 24, 25, 48, 49, 53, 54, 201.) At the hearing, Farmer acknowledged and admitted that he and his employees made record keeping errors. (TR 62, 197, 201, 210, 211, 212.) He denied that the violations were committed willfully, meaning with bad purpose. (TR 62, 192, 202, 211, 224.) But the GCA requires more than just not having a bad purpose; it requires strict adherence to the record keeping requirements and conduct of business regulations. See Willingham Sports, 348 F.Supp.2d at 1309 n. 14 (S.D. Ala. 2004); Appalachian Resources, 387 F.3d at 465; Stein's, Inc. v. Blumenthal, 649 F.2d 463 (7th Cir. 1980). Because Farmer understood the GCA's record keeping requirements and yet failed to abide by those regulations, he willfully violated the GCA. See 3 Bridges, 216 F.Supp.2d

-29-

at 659 (holding that the willfulness standard was satisfied because petitioner admitted certain violations, had 10 years experience as a licensed dealer, was well-versed in Form 4473 and bound book requirements, and was a repeat offender).

### IV. CONCLUSION

This case is barred by Plaintiff's failure to timely file his Petition for judicial review. The court is without subject matter jurisdiction to review the revocation of his firearms license. Therefore, this Court should dismiss this civil action.

In the alternative, because the undisputed material facts show that Plaintiff was aware of his legal obligations and yet was plainly indifferent or purposefully regarded them, his violations of the GCA are willful and ATF properly revoked his firearms license. Therefore, this Court should grant ATF's motion for summary judgment.

    Respectfully submitted,

    GREGORY G. LOCKHART
    United States Attorney

    s/Gregory P. Dunsky
    GREGORY P. DUNSKY (0009098)
    Assistant United States Attorney
    Attorney for Defendant
    602 Federal Building
    200 West Second Street
    Dayton, Ohio 45402
    Telephone: (937) 225-2910
    Fax: (937) 225-2568
    Gregory.Dunsky@usdoj.gov

## **CERTIFICATION OF SERVICE**

I hereby certify that a copy of the foregoing Motion to Dismiss or Motion for Summary Judgment was served by regular U.S. Mail upon the Plaintiff, James Thomas Farmer Jr., pro se, 30 Schell Road, Wilmington OH 45177, this 31st day of October, 2005.

/s/ Gregory P. Dunsky
Gregory P. Dunsky
Assistant United States Attorney