

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Tampa Field Division*

Tampa, Florida 33602-3945

www.atf.gov

MEMORANDUM TO: Director, Industry Operations
Columbus Field Division ~~∿∿ℓ₆-3-05~~

FROM: Desiree M. Winger
Hearing Officer, Tampa Field Division

SUBJECT: Report and Recommendation Concerning
Notice of Revocation
Of Federal Firearms License
James Thomas Farmer, Jr.
d/b/a Jim's Guns & Whatever
1148 Richfield Center Road
Dayton, OH 45430
4-31-113-01-4E-10084

## INTRODUCTION

An informal hearing was held on April 21, 2005, from approximately 9:55am to 2:40pm
at the ATF Columbus Field Division Office, 37 W. Broad Street, Suite 200, Columbus,
Ohio, 43215, regarding the Notice of Revocation of License, ATF F 4500, issued to
James Thomas Farmer, Jr. The hearing was held under the provisions of Section 923(f)
of Title 18 United States Code and Section 478.74, Title 27 Code of Federal Regulations.
I, Desiree M. Winger, presided as Hearing Officer.

## APPEARING FOR THE GOVERNMENT

Joyce Ryback, Office of Division Counsel, represented the government. Also present
were Inspectors Julie Lanter, William Schmarr, Marilyn Trombatore and David Counts as
witnesses.

## APPEARING FOR THE LICENSEE

The licensee, James Thomas Farmer, Jr., appeared at the hearing. Also present were
James Thomas Farmer, Sr. as observer.

Government
Exhibit C

## BACKGROUND

On August 4, 2004, the Director of Industry Operations, Columbus Field Division, issued a Notice of Revocation of License, ATF F 4500, to James Thomas Farmer, Jr, d/b/a Jim's Guns & Whatever, licensed as a Type 01, Dealer in Firearms Other than Destructive Devices, 4-31-113-01-4E-10084, 1148 Richfield Center Road, Dayton, OH 45430 (**Government Exhibit #1, License Registration Report, 04/22/04**). The basis for the proposed revocation of license was premised on willful recordkeeping violations (**Government Exhibit #2, ATF F 4500, Notice of Revocation**). The licensee was sent the Notice of Revocation via certified mail (**Government Exhibit #3, Postal Receipts**). On two separate occasions, Mr. Farmer requested a hearing in writing (**Government Exhibit #4a, Hearing Request, dated 08/06/04** and **Government Exhibit #4b, Hearing Request, dated 08/10/04**). The Columbus Field Division requested a hearing officer on August 10, 2004 (**Government Exhibit #5, Hearing Officer Request**). On August 31, 2004, a hearing officer was assigned (**Government Exhibit #6**). The hearing was originally scheduled for January 12, 2005 (**Government Exhibit #7, Notice of Hearing**) and notice was sent to the licensee via certified mail (**Government Exhibit #8, Postal Receipts**). Mr. Farmer received the notice and confirmed he would attend (**Government Exhibit #9, Hearing Acknowledgement**). Due to an emergency, Division Counsel rescheduled the hearing to April 21, 2005 (**Government Exhibit #10, Notice of Hearing**) and notice was sent again to Mr. Farmer via certified mail (**Government Exhibit #11, Postal Receipts**).

## GOVERNMENT PRESENTATION

In January 2004, Inspector Lanter conducted a compliance inspection. The period reviewed was September 2002 through January 2004 (**Government Exhibit #32 Worksheet #1**).

Of the 1228 ATF F's 4473 on hand, approximately 400 were reviewed. Two violations were cited.

**Count 1, 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.124(c)(3)(iii) ATF F's 4473, Firearms Transaction Record**

Inspector Lanter testified that on ten occasions, Mr. Farmer failed to record the NICS response on ATF F 4473 (**Government Exhibit #36, Worksheet #5**). This was cited on a Report of Violations (**Government Exhibit #37, ATF F 5030.5**).

Willfulness

The government alleges that Mr. Farmer displayed plain indifference with regard to his firearms records. Mr. Farmer himself does not dispute that he knew the proper procedures.

A regulations review was completed by Inspector Lanter with the licensee on March 2, 2004 (**Government Exhibit #38, Acknowledgement of Federal Firearms Regulations**). She stated that he seemed familiar with the regulations.

In 1996, Inspector Trombatore conducted a compliance inspection and she testified that Mr. Farmer had no questions and that he seemed well versed and knowledgeable in the regulations.

Inspector Counts testified that during a compliance inspection in 2001, 115 F's 4473 were reviewed. On one occasion, item #12c, NICS response, was left blank (**Government Exhibit #26, Worksheet #4**). This was cited on a Report of Violations (**Government Exhibit #29, ATF F 5030.5**). Inspector Counts testified that he completed a regulations review, which normally takes several hours (**Government Exhibit #30, Federal Firearms Regulations Review**). As a result of that inspection, Mr. Farmer received a Warning Letter. The letter states, in part, that "you are reminded that your Federal firearms license is conditioned upon your compliance with Federal laws and regulations. Repeat violations of those listed above will be viewed as willful and may result in the revocation of your license" (**Government Exhibit #31, Warning Letter, dated 07/20/2001**).

Mr. Farmer admitted to committing the violation but repeatedly stated throughout the hearing that it was not done willfully. He knew the response had to be recorded on the F 4473 but claimed an employee failed to complete the form properly. He knows the records were not kept the way they should have been and were not "up to snuff."

He confirmed that he signed previous Reports of Violation and Regulation Reviews. Mr. Farmer also confirmed that he was present for previous closing conferences and remedial actions were discussed with him.

Mr. Farmer testified that he is responsible for the violations and that he is charged with the responsibility of knowing the regulations. He further admitted to receiving ATF publications concerning regulations.

### Count 2, 18 U.S.C. §§ 922(t)(1) and 923(g)(1)(A) and 27 CFR § 478.121(c) and 478.124(c)(3)(iii), Acquisition and Disposition Record

In her review of the ATF F's 4473, Inspector Lanter found that the licensee had failed to conduct a NICS check prior to disposing of a firearm on one occasion. Mr. Farmer told her that he remembered the sale. It was at the end of a busy day and he simply forgot to conduct the check. He admitted to her, however, that he was aware of the requirement.

<u>Willfulness</u>

The government alleges that Mr. Farmer displayed plain indifference with regard to his firearms records. Mr. Farmer himself does not dispute that he knew the proper procedures.

A regulations review was completed by Inspector Lanter with the licensee on March 2, 2004 (**Government Exhibit #38, Acknowledgement of Federal Firearms Regulations**). She stated that he seemed familiar with the regulations.

In March 1995, Inspector Schmarr received information that Mr. Farmer was not complying with the Brady Law. An inspection was subsequently conducted (**Government Exhibit #12, Worksheet #1**) and Inspector Schmarr determined that Mr. Farmer was not, in fact, complying with the Brady requirements (**Government Exhibit #14, Worksheet #5, page 2**). Mr. Farmer asked numerous questions concerning the requirements and received a written response from the area office (**Government Exhibit #13, Letter to Mr. Farmer, dated 03/24/95**). As a result of the inspection, Mr. Farmer received a warning letter which states, in part, that "you are reminded that your Federal Firearms License is conditioned upon your compliance with Federal firearms laws and regulations. Repeated violations will be viewed as willful and may result in the revocation of your license" (**Government Exhibit #17, Warning Letter, dated 05/15/95**).

Inspector Counts testified that during a compliance inspection in 2001, 115 F's 4473 were reviewed. On two occasions, Mr. Farmer failed to conduct a NICS prior to disposing of a firearm to a corporation (**Government Exhibit #24, Worksheet #6**). This was cited on a Report of Violations (**Government Exhibit #29, ATF F 5030.5**). Inspector Counts testified that he completed a regulations review, which normally takes several hours (**Government Exhibit #30, Federal Firearms Regulations Review**). As a result of that inspection, Mr. Farmer received a Warning Letter. The letter states, in part, that "you are reminded that your Federal firearms license is conditioned upon your compliance with Federal laws and regulations. Repeat violations of those listed above will be viewed as willful and may result in the revocation of your license" (**Government Exhibit #31, Warning Letter, 07/20/2001**).

Mr. Farmer admitted to committing the violation but repeatedly stated throughout the hearing that it was not done willfully. He knew that a NICS must be completed prior to disposition of a firearm F 4473 but claimed the transfer happened at the end of a busy day and he simply forgot to conduct it.

He confirmed that he signed previous Reports of Violation and Regulation Reviews. Mr. Farmer also confirmed that he was present for previous closing conferences and remedial actions were discussed with him.

Mr. Farmer testified that he is responsible for the violations and that he is charged with the responsibility of knowing the regulations. He further admitted to receiving ATF publications concerning regulations.

**Count 3, 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.125(e), Acquisition and Disposition Record**

Inspector Lanter testified that during her review of the licensee's bound book, she determined that on eleven occasions, Mr. Farmer failed to record the complete address of the person from whom the firearm was received (**Government Exhibit #34, Worksheet #3**). She stated that this was a repeat violation from the 2001 inspection and that she believed that Mr. Farmer was aware of the requirement from her conversation with him and from the fact that the majority of the entries in the bound book were proper.

Mr. Farmer stated that Inspector Counts had told him during the 2001 inspection that he could make a list of customer names and addresses in the front of the bound book and then he would only have to record the name in the line entry. Inspector Lanter agreed with this but stated that on these eleven occasions, no entry in the front of the book was found.

This was cited on a Report of Violations (**Government Exhibit #37, ATF F 5030.5**) and proper completion of the bound book was reviewed (**Government Exhibit #38, Acknowledgement of Federal Firearms Regulations**).

Willfulness

Inspector Counts testified that during the 2001 inspection, he found that Mr. Farmer had failed to record the address of the person from whom the firearm was received (**Government Exhibit #24, Worksheet #6**). Since there was no room in the line entries to record the complete information, Mr. Farmer was instructed to make a list of the addresses and attach it to the bound book. He was further instructed that henceforth, he was to record the complete information in the bound book. This was cited on a Report of Violations (**Government Exhibit #29, ATF F 5030.5**) and Mr. Farmer was given instruction on how to properly complete the bound book entries (**Government Exhibit #30, Federal Firearms Regulation Review**). As a result of this inspection, Mr. Farmer received a Warning Letter. The letter states, in part, that "you are reminded that your Federal firearms license is conditioned upon your compliance with Federal laws and regulations. Repeat violations of those listed above will be viewed as willful and may result in the revocation of your license" (**Government Exhibit #31, Warning Letter, 07/20/2001**).

During his questioning of Inspector Counts, Mr. Farmer agreed that he was told that the address "labels" in the front of the book were for the previous entries (2001) only but that the information did not "stick" in his head.

Mr. Farmer admitted to committing the violation but repeatedly stated throughout the hearing that it was not done willfully. He thought he had a list of addresses for those customers in the front of the book. He emphasized that since the 2001 inspection, he was so scared that he focused entirely on making sure his inventory was correct.

He confirmed that he signed previous Reports of Violation and Regulation Reviews. Mr. Farmer also confirmed that he was present for previous closing conferences and remedial actions were discussed with him.

Mr. Farmer testified that he is responsible for the violations and that he is charged with the responsibility of knowing the regulations. He further admitted to receiving ATF publications concerning regulations.

**Count 4, 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.125(e), Acquisition and Disposition Record**

Inspector Lanter testified that upon taking the initial inventory, the licensee had 890 guns on hand and 1039 open entries in the bound book. After reconciliation, she determined that the licensee failed to timely record the disposition 41 guns in the bound book (**Government Exhibit #33, Worksheet #2**). This was cited on a Report of Violations, although Reference #4 on the form states 39 guns were not timely logged out (**Government Exhibit #37, ATF F 5030.5**). Proper completion of the bound book was reviewed (**Government Exhibit #38, Acknowledgement of Federal Firearms Regulations**). This was a repeat violation from the 2001 inspection.

Willfulness

In 1996, Inspector Trombatore conducted a compliance inspection. During the inventory verification, she noted that the licensee failed to timely record the disposition of three guns (**Government Exhibit #20, Worksheet #2, page 3**). This violation was not cited on ATF F 5030.5 (**Government Exhibit #21, Workplan "Remarks/Other"**). Inspector Trombatore stated that Mr. Farmer seemed so well versed in the regulations that she did not conduct a regulations review with him.

Mr. Farmer was cited for the same violation during the 2001 inspection conducted by Inspector Counts. Upon taking the initial inventory in May, Inspector Counts discovered that some ATF F's 4473 from 2000 and none of the F's 4473 from 2001 had been logged out of the bound book. This totaled approximately 153 guns (**Government Exhibit #24, Worksheet #6**). After three separate physical inventories, the licensee was not able to determine the disposition of 27 guns (**Government Exhibit #22, Worksheet #1**) and a Theft/Loss Report was filed (**Government Exhibit #25, ATF F 3310.11**). This was cited on a Report of Violations (**Government Exhibit #29, ATF F 5030.5**) and a regulations review was conducted (**Government Exhibit #30, Federal Firearms Regulation Review**).

As a result of this inspection, Mr. Farmer received a Warning Letter. The letter states, in part, that "you are reminded that your Federal firearms license is conditioned upon your compliance with Federal laws and regulations. Repeat violations of those listed above will be viewed as willful and may result in the revocation of your license" (**Government Exhibit #31, Warning Letter, 07/20/2001**).

Mr. Farmer admitted to committing the violation but repeatedly stated throughout the hearing that it was not done willfully. He testified that he told Inspector Counts that he thought he had a week to log in guns and a month to log them out. Inspector Counts testified that he does not recall Mr. Farmer's statement to that effect.

He confirmed that he signed previous Reports of Violation and Regulation Reviews. Mr. Farmer also confirmed that he was present for previous closing conferences and remedial actions were discussed with him.

Mr. Farmer testified that he is responsible for the violations and that he is charged with the responsibility of knowing the regulations. He further admitted to receiving ATF publications concerning regulations.

**Count 5, 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.125(e), Acquisition and Disposition Record**

Inspector Lanter testified that upon her initial inventory, she prepared a list of discrepancies for Mr. Farmer to resolve. One list contained firearms that she found in the physical inventory but not in the bound book. When she returned to licensed premises for follow-up visits, she noted that one gun, a CAI, FN/FAL Sporter, s/n 9602302B59, was no longer in inventory but had still not been logged into the bound book (**Government Exhibit #33, Worksheet #2**). She and Mr. Farmer looked for the disposition on the F's 4473 but could not locate it. When Inspector Lanter initially saw the gun it did have an inventory tag on it, but it was the wrong tag.

Mr. Farmer testified that he called the importer of the firearm and that they claimed the serial number does not exist. He stated that he believes that Inspector Lanter saw what she saw, but thinks she recorded a number other than the actual serial number of the gun. Inspector Lanter testified that she is familiar with the marking requirements and believes that she did in fact record the serial number of the gun correctly. If she had recorded the wrong serial number, a CAI FN/FAL with a different serial number would have shown up on her list of inventory discrepancies and they could have reconciled the error. Another CAI FN/FAL did not show up, however.

This was cited on a Report of Violations (**Government Exhibit #37, ATF F 5030.5**).

Willfulness

During the 1996 inspection, Inspector Trombatore testified that Mr. Farmer seemed so well versed in the regulations that she did not complete the regulations review.

Inspector Counts reviewed the proper completion of the bound book record in 2001 (**Government Exhibit #30, Federal Firearms Regulations Review**). He testified that Mr. Farmer understood the bound book requirements.

Mr. Farmer testified that he is responsible for the violations and that he is charged with the responsibility of knowing the regulations. He further admitted to receiving ATF publications concerning regulations.

**Count 6, 18 U.S.C. §§ 922(m) and 923(g)(1)(A); 27 CFR § 478.121(c) and 478.125(e), Acquisition and Disposition Record**

Inspector Lanter testified that on 23 occasions the licensee falsely entered firearms into the bound book that had been previously recorded. She stated that Mr. Farmer told her that if a tag was missing from a gun and he could not immediately locate the entry in the bound book, he would log the gun in again, this time showing Mr. Farmer as the person from whom the gun was acquired and showing the current date. Consequently, the original, correct entry was left without the corresponding disposition (**Government Exhibit #33, Worksheet #2**).

<u>Willfulness</u>

During the 1996 compliance inspection, Inspector Trombatore discovered that the licensee had logged in a firearm twice (**Government Exhibit #20, Worksheet #3, page 3**). Although not cited on a Report of Violations, the violation was noted (**Government Exhibit #21, Workplan, "Remarks/Other"**).

At the conclusion of the 2001 inspection, Inspector Counts completed a records review with Mr. Farmer (**Government Exhibit #30, Federal Firearms Regulation Review**).

Mr. Farmer readily agreed that he committed the violation. He stated that he was so scared after the 2001 inspection, when he learned how many inventory errors he had, that he felt that it was better to get the guns into the book and logged out than to not have them entered. He stated that he would initially look for the original entry but if he could not find it immediately, he would just log it in again.

## LICENSEE PRESENTATION

Mr. Farmer testified that he began to build his gun business in 1978 as a hobby. He started out going to gun shows and then opened the shop.

He was in total shock at the state of his firearms records during the 2001 inspection. He felt that most of the emphasis during that inspection was on the inventory discrepancies and after the conclusion of the inspection, his focus has been on correcting and properly maintaining the inventory.

He determined that the majority of his errors involved not having guns timely logged out of the book. If guns did not have tags or the tags had the wrong inventory number, he would set them aside and the guns would not be logged out. In order to make recording dispositions easier, Mr. Farmer set about entering his entire current inventory, along with the inventory number into a Word Perfect program. Then he could search by serial

number if a tag was lost or incorrect. He was in the middle of this task when Inspector Lanter initiated her inspection in 2004. Once she completed her inventory, he was once again in shock at the discrepancies found.

Mr. Farmer stated that his employee who worked the counter failed to check the NICS response on the F's 4473, (**Government Exhibit #2, Notice of Revocation, Count #1**). He admitted he never reviewed the forms before his father logged them out of the bound book and he failed to tell his father what to look for because he felt the inventory issues were much more important.

Mr. Farmer stated that he suffers from adult onset diabetes and it has seriously affected his health. His store is also quite busy and at the end of a day, he is usually very tired and distracted. That is why he failed to conduct the NICS check on one occasion (**Government Exhibit #2, Notice of Revocation, Count #2**).

He does recall that Inspector Counts told him to record the complete address for persons from whom he received firearms in the front of the book. While preparing for this hearing, he reviewed the counts and saw that for those eleven guns, he had the complete information recorded. Inspector Lanter countered that he had corrected the book during the inspection and that was why the information was now recorded. Mr. Farmer did not disagree but stated that he could not recall the sequence of events (**Government Exhibit #2, Notice of Revocation, Count #3**).

Mr. Farmer agreed that forty-one guns were not timely logged out of the bound book (**Government Exhibit #2, Notice of Revocation, Count #4**) but claimed it was not willful. The eight missing guns may have been sales made at a gun show. He thinks the F's 4473 may have been accidentally thrown out. He does not recall recording the dispositions from the next to the last show he attended before the inspection.

Mr. Farmer's focus was on the computer program that would help him reconcile the physical inventory and the records. He thought he had made progress from 2001-2004 but admitted that he had been so busy since 2001 that he had not taken a physical inventory.

While he does not dispute that Inspector Lanter saw a CAI, FN/FAL in inventory, he does think it possible that she erroneously recorded the serial number. The importer does not have a record of that number and the model number may also have been incorrect (**Government Exhibit #5, Notice of Revocation, Count #5**).

Again, Mr. Farmer readily admitted to logging in the 23 firearms twice (**Government Exhibit #2, Notice of Revocation, Count #6**). He reiterated that he felt that it was more important to get the gun in the book and since it was in his possession, he logged it in from himself with the current date.

Since 2004, he has been reconciling his physical inventory and records. His previous records were not anywhere near where they should have been but they are much better now. He does not think that with his volume that having 41 guns not timely out of the bound book is that egregious.

Mr. Farmer stressed he will do anything to cooperate and make things right.

## FINDINGS OF FACT

**Count 1, 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.124(c)(3)(iii) ATF F's 4473, Firearms Transaction Record**

Inspector Lanter testified that on ten occasions, Mr. Farmer failed to record the NICS response on ATF F 4473 (**Government Exhibit #36, Worksheet #5**). This was cited on a Report of Violations (**Government Exhibit #37, ATF F 5030.5**).

Mr. Farmer stated that his employee who worked the counter failed to check the NICS response on the F's 4473, (**Government Exhibit #2, Notice of Revocation, Count #1**). He admitted he never reviewed the forms before his father logged them out of the bound book and he failed to tell his father what to look for because he felt the inventory issues were much more important.

Inspector Counts testified that during a compliance inspection in 2001, 115 F's 4473 were reviewed. On one occasion, item #12c, NICS response, was left blank (**Government Exhibit #26, Worksheet #4**). This was cited on a Report of Violations (**Government Exhibit #29, ATF F 5030.5**). Inspector Counts testified that he completed a regulations review, which normally takes several hours (**Government Exhibit #30, Federal Firearms Regulations Review**). As a result of this inspection, Mr. Farmer received a Warning Letter. The letter states, in part, that "you are reminded that your Federal firearms license is conditioned upon your compliance with Federal laws and regulations. Repeat violations of those listed above will be viewed as willful and may result in the revocation of your license" (**Government Exhibit #31, Warning Letter, dated 07/20/2001**).

**I find that Mr. Farmer willfully failed to properly record the NICS response on ATF F's 4473 on ten occasions.**

**Count 2, 18 U.S.C. §§ 922(t)(1) and 923(g)(1)(A) and 27 CFR § 478.121(c) and 478.124(c)(3)(iii), Acquisition and Disposition Record**

In her review of the ATF F's 4473, Inspector Lanter found that the licensee had failed to conduct a NICS check prior to disposing of a firearm on one occasion. Mr. Farmer stated that he was aware of the requirement. He told Inspector Lanter that he remembered the sale. It was at the end of a busy day.

Mr. Farmer stated that he suffers from adult onset diabetes and it has seriously affected his health. His store is also quite busy and at the end of a day, he is usually very tired and distracted. That is why he failed to conduct the NICS check on one occasion (**Government Exhibit #2, Notice of Revocation, Count #2**).

In March 1995, Inspector Schmarr received information that Mr. Farmer was not complying with the Brady Law. An inspection was subsequently conducted (**Government Exhibit #12, Worksheet #1**) and Inspector Schmarr determined that Mr. Farmer was not, in fact, complying with the Brady requirements (**Government Exhibit #14, Worksheet #5, page 2**). Mr. Farmer asked numerous questions concerning the requirements and received a written response from the area office (**Government Exhibit #13, Letter to Mr. Farmer, dated 03/24/95**). As a result of the inspection, Mr. Farmer received a warning letter which states in part that, "you are reminded that your Federal Firearms License is conditioned upon your compliance with Federal firearms laws and regulations. Repeated violations will be viewed as willful and may result in the revocation of your license" (**Government Exhibit #17, Warning Letter, dated 05/15/95**).

Inspector Counts testified that during a compliance inspection in 2001, 115 F's 4473 were reviewed. On two occasions, Mr. Farmer failed to conduct a NICS prior to disposing of a firearm to a corporation (**Government Exhibit #24, Worksheet #6**). This was cited on a Report of Violations (**Government Exhibit #29, ATF F 5030.5**). Inspector Counts testified that he completed a regulations review, which normally takes several hours (**Government Exhibit #30, Federal Firearms Regulations Review**). As a result of that inspection, Mr. Farmer received a Warning Letter. The letter states, in part, that "you are reminded that your Federal firearms license is conditioned upon your compliance with Federal laws and regulations. Repeat violations of those listed above will be viewed as willful and may result in the revocation of your license" (**Government Exhibit #31, Warning Letter, 07/20/2001).**

**I find that on one occasion, Mr. Farmer willfully failed to contact the National Instant Criminal Background Check System (NICS) prior to transferring a firearm to a person not licensed under the provisions of Chapter 44, Title 18, United States code.**

**Count 3, 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.125(e), Acquisition and Disposition Record**

Inspector Lanter testified that during her review of the licensee's bound book, she determined that on eleven occasions, Mr. Farmer failed to record the address of the person from whom the firearm was received (**Government Exhibit #34, Worksheet #3**). She stated that this was a repeat violation from the 2001 inspection and that she believed that Mr. Farmer was aware of the requirement from her conversation with him and from the fact that the majority of the entries in the bound book were proper.

Mr. Farmer stated that Inspector Counts had told him during the 2001 inspection that he could make a list of customer names and addresses in the front of the bound book and then he would only have to record the name in the line entry. Inspector Lanter agreed with this but stated that on these eleven occasions, no entry in the front of the book was found.

While preparing for this hearing, Mr. Farmer reviewed the counts and saw that for those eleven guns, he had the complete information recorded. Inspector Lanter countered that he had corrected the book during the inspection and that was why the information was now recorded. Mr. Farmer did not disagree but stated that he could not recall the sequence of events (**Government Exhibit #2, Notice of Revocation, Count #3**).

Inspector Counts testified that during the 2001 inspection, he found that Mr. Farmer had failed to record the address of the person from whom the firearm was received (**Government Exhibit #24, Worksheet #6**). Since there was no room in the line entries to record the complete information, Mr. Farmer was instructed to make a list of the addresses and attach it to the bound book. He was further instructed that henceforth, he was to record the complete information in the bound book. This was cited on a Report of Violations (**Government Exhibit #29, ATF F 5030.5**) and Mr. Farmer was given instruction on how to properly complete the bound book entries (**Government Exhibit #30, Federal Firearms Regulation Review**). As a result of this inspection, Mr. Farmer received a Warning Letter. The letter states, in part, that "you are reminded that your Federal firearms license is conditioned upon your compliance with Federal laws and regulations. Repeat violations of those listed above will be viewed as willful and may result in the revocation of your license" (**Government Exhibit #31, Warning Letter, 07/20/2001**).

**I find that Mr. Farmer willfully failed to completely record the address of the person from whom the firearm was acquired for eleven firearms entered into the Acquisition and Disposition Record.**

**Count 4, 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.125(e), Acquisition and Disposition Record**

Inspector Lanter testified that upon taking the initial inventory, the licensee had 890 guns on hand and 1039 open entries in the bound book. After reconciliation, she determined that the licensee failed to timely record the disposition 41 guns in the bound book (**Government Exhibit #2, Worksheet #2**). This was cited on a Report of Violations, although Reference #4 on the form states 39 guns were not timely logged out (**Government Exhibit #37, ATF F 5030.5**). Proper completion of the bound book was reviewed (**Government Exhibit #38, Acknowledgement of Federal Firearms Regulations**). This was a repeat violation from the 2001 inspection.

Mr. Farmer agreed that forty-one guns were not timely logged out of the bound book (**Government Exhibit #2, Notice of Revocation, Count #4**) but claimed it was not willful. The eight missing guns may have been sales made at a gun show. He thinks the F's 4473 may have been accidentally thrown out. He does not recall recording the dispositions from the next to the last show he attended before the inspection commenced in 2004.

In 1996, Inspector Trombatore conducted a compliance inspection. During the inventory verification, she noted that the licensee failed to timely record the disposition of three guns (**Government Exhibit #20, Worksheet #2, page 3**). This violation was not cited on ATF F 5030.5 (**Government Exhibit #21, Workplan "Remarks/Other"**). Inspector Trombatore stated that Mr. Farmer seemed so well versed in the regulations that she did not conduct a regulations review with him.

Mr. Farmer was cited for the same violation during the 2001 inspection conducted by Inspector Counts. Upon taking the initial inventory in May, Inspector Counts discovered that some ATF F's 4473 from 2000 and none of the F's 4473 from 2001 had been logged out of the bound book. This totaled approximately 153 guns (**Government Exhibit #24, Worksheet #6**). After three separate physical inventories, the licensee was not able to determine the disposition of 27 guns (**Government Exhibit #22, Worksheet #1**) and a Theft/Loss Report was filed (**Government Exhibit #25, ATF F 3310.11**). This was cited on a Report of Violations (**Government Exhibit #29, ATF F 5030.5**) and a regulations review was conducted (**Government Exhibit #30, Federal Firearms Regulation Review**).

As a result of this inspection, Mr. Farmer received a Warning Letter. The letter states, in part, that "you are reminded that your Federal firearms license is conditioned upon your compliance with Federal laws and regulations. Repeat violations of those listed above will be viewed as willful and may result in the revocation of your license" (**Government Exhibit #31, Warning Letter, 07/20/2001**).

**I find that Mr. Farmer willfully failed to timely record the disposition of forty-one firearms into the Acquisition and Disposition Record.**

**Count 5, 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.125(e), Acquisition and Disposition Record**

Inspector Lanter testified that upon her initial inventory she prepared a list of discrepancies for Mr. Farmer to resolve. One list contained firearms that she found in the physical inventory but not in the bound book. When she returned to the licensed premises for follow-up visits, she noted that one gun, a CAI, FN/FAL Sporter, s/n 9602302B59, was no longer in inventory but had still not been logged into the bound book (**Government Exhibit #33, Worksheet #2**). She and Mr. Farmer looked for the disposition on the F's 4473 but could not locate it. The gun did have an inventory tag on it when she saw the gun initially, but it was the wrong tag.

Mr. Farmer testified during the hearing that he called the importer of the firearm and that they claimed the serial number does not exist. He stated that he believes that Inspector Lanter saw what she saw, but thinks she recorded a number other than the actual serial number of the gun. Inspector Lanter testified that she is familiar with the marking requirements and believes that she did in fact record the serial number of the gun correctly. If she had recorded the wrong serial number, a CAI FN/FAL with a different number would have shown up on her list of inventory discrepancies and they could have reconciled the error. Another CAI FN/FAL did not show up, however.

During the 1996 inspection, Inspector Trombatore testified that Mr. Farmer seemed so well versed in the regulations that she did not complete the regulations review.

Inspector Counts reviewed the proper completion of the bound book record in 2001 (**Government Exhibit #30, Federal Firearms Regulations Review**). He testified that Mr. Farmer understood the bound book requirements.

Mr. Farmer testified that he is responsible for the violations and that he is charged with the responsibility of knowing the regulations. He further admitted to receiving ATF publications concerning regulations.

**I find that Mr. Farmer willfully failed to timely record the acquisition of one firearm into the Acquisition and Disposition Record.**

**Count 6, 18 U.S.C. §§ 922(m) and 923(g)(1)(A); 27 CFR § 478.121(c) and 478.125(e), Acquisition and Disposition Record**

Inspector Lanter testified that on 23 occasions, the licensee falsely entered firearms into the bound book that had been previously recorded. She stated that Mr. Farmer told her that if a tag was missing from a gun and he could not immediately locate the entry in the bound book, he would log the gun in again, this time showing Mr. Farmer as the person from whom the gun was acquired and showing the current date. Consequently, the original, correct entry was left without the corresponding disposition (**Government Exhibit #33, Worksheet #2**).

Mr. Farmer readily agreed that he committed the violation. He stated that he was so scared after the 2001 inspection, when he learned how many inventory errors he had, that he felt that it was better to get the guns into the book and logged out than to not have them entered. He stated that he would initially look for the original entry but if he could not find it immediately, he would just log it in again.

During the 1996 compliance inspection, Inspector Trombatore discovered that the licensee had logged in a firearm twice (**Government Exhibit #20, Worksheet #3, page 3**). Although not cited on a Report of Violations, the violation was noted (**Government Exhibit #21, Workplan, "Remarks/Other"**).

At the conclusion of the 2001 inspection, Inspector Counts completed a records review with Mr. Farmer (**Government Exhibit #30, Federal Firearms Regulation Review**).

**I find that on at least twenty-three occasions, Mr. Farmer falsely entered firearms into the Acquisition and Disposition Record that had been previously recorded in said record and had not been acquired on the date that was recorded in the Acquisition and Disposition Record.**

## CONCLUSION

The Bureau of Alcohol, Tobacco, Firearms and Explosives may revoke a Federal firearms license if the licensee willfully violates any provision of Chapter 44, Title 18, United States Code (the Gun Control Act, as amended,) or any rule or regulation thereunder.

**The findings of fact as stated above prove that Mr. Farmer has willfully violated the provisions of 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.124(c)(3)(iii)**. The government presented evidence that on ten occasions, Mr. Farmer failed to record the NICS response on ATF F's 4473. Mr. Farmer was cited for the same violation during the 2001 inspection. He received a Report of Violations, a regulations review and a Warning Letter. Mr. Farmer did not dispute the violation and stated he was aware that he must record the response on the F 4473.

**The findings of fact as stated above prove that Mr. Farmer has willfully violated the provisions of 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.124(c)(3)(iii).** The government presented evidence that on one occasion, Mr. Farmer failed to conduct a NICS check prior to disposing of a firearm. During the 1996 and 2001 inspections, Mr. Farmer was cited for the same violation. As a result of the 2001 inspection, Mr. Farmer received a regulations review and a Warning Letter. He did not dispute the violation and stated that he was aware that a background check was required prior to the disposition of a firearm.

**The findings of fact as stated above prove that Mr. Farmer has willfully violated the provisions of 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.125(e).** On eleven occasions, Mr. Farmer failed to completely record the address of the person from whom the firearm was acquired into the Acquisition and Disposition Record. This was a repeat violation from the 2001 inspection. Mr. Farmer received a Report of Violations, regulations review and a Warning Letter as a result of that inspection. He stated that he was aware of the requirement.

**The findings of fact as stated above prove that Mr. Farmer has willfully violated the provisions of 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.125(e).** On forty-one occasions, Mr. Farmer failed to timely record the disposition of a firearm into the Acquisition and Disposition Record. This same violation was noted during the 1996 inspection and was a repeat violation from the 2001 inspection. At the conclusion of the 2001 inspection, Mr. Farmer received a regulations review and a Warning Letter.

He repeatedly stated during testimony that after the conclusion of 2001 inspection, all of his attention was focused on the inventory and making sure the guns on hand reconciled to the bound book. Yet, four of the six counts in the revocation notice are inventory violations. Mr. Farmer admitted that he was aware of the requirements.

**The findings of fact as stated above prove that Mr. Farmer has willfully violated the provisions of 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.125(e).** On one occasion, Mr. Farmer failed to timely record the acquisition of one gun into the Acquisition and Disposition Record. This same violation was noted during the 1996 inspection. Three inspectors who conducted previous inspections all stated that Mr. Farmer seemed well versed in the bound book requirements. He received a thorough records review in 2001. Mr. Farmer believes that Inspector Lanter may have recorded the serial number incorrectly, however another CAI FN/FAL was not found on the reconciliation list.

**The findings of fact as stated above prove that Mr. Farmer has willfully violated the provisions of 18 U.S.C. §§ 923(g)(1)(A); 27 CFR § 478.121(c) and 478.125(e).** On twenty-three occasions, Mr. Farmer falsely entered firearms into the Acquisition and Disposition Record that had previously been recorded in said record and had not been acquired on the date that was recorded in the Acquisition and Disposition Record. This same violation was noted during the 1996 inspection. Mr. Farmer admitted to the violation. He reiterated that after the conclusion of 2001 inspection, all of his attention was focused on the inventory and making sure the guns on hand reconciled to the bound book. When he could not immediately locate an entry in the bound book, he would simply log it in again, this time showing the person from whom acquired as himself and recording the current date. He stated that he knew this was not correct, but he felt it was more important to get the gun into the bound book.

Therefore, this Federal firearms license should be revoked under the provisions of 18 U.S.C. Section 923(e).

## RECOMMENDATION

Upon consideration of all the evidence, including testimony and documents, presented by both parties, and the arguments of both parties, at the hearing, I recommend that the Federal Firearms License 4-31-113-01-4E-10084, issued to James Thomas Farmer Jr., d/b/a Jim's Guns & Whatever, 1148 Richfield Center Road, Dayton, Ohio 45430 be revoked.

*Desiree M. Winger*
Hearing Officer

Attachments

## GOVERNMENT EXHIBITS

Exhibit G-1,  Federal Licensing System, License Registration Report

Exhibit G-2, Notice of Revocation of License, dated 08/04/2004

Exhibit G-3, Postal Receipts, 08/04/2004

Exhibit G-4A, Licensee's Request for Hearing, 08/06/2004

Exhibit G-4B, Licensee's Request for Hearing, 08/10/2004

Exhibit G-5, Request for Hearing Officer, 08/10/2004

Exhibit G-6, Assignment of Hearing Officer, 08/31/2004

Exhibit G-7, Notice of Hearing, 12/9/2004

Exhibit G-8, Postal Receipts, 12/09/2004

Exhibit G-9, Hearing Acknowledgment, 12/18/2004

Exhibit G-10, Notice of Hearing, 03/04/2005

Exhibit G-11, Postal Receipts, 03/04/2005

Exhibit G-12, Worksheet #1, 03/30/1995

Exhibit G-13, Letter to Mr. Farmer, 03/24/1995

Exhibit G-14, Worksheet #5, 03/29/1995

Exhibit G-15, Worksheet #2, 03/29/1995

Exhibit G-16, ATF F 5030.5, Report of Violations, 04/18/1995

Exhibit G-17, Warning Letter, 05/15/1995

Exhibit G-18, Worksheet #5, 07/25/1996

Exhibit G-19, Worksheet #5A, 07/25/1996 and 08/14/1996

Exhibit G-20, Worksheet #2, 07/26/1996

Exhibit G-21, Workplan, Remarks/Other, 08/14/1996

## GOVERNMENT EXHIBITS
### Continued

Exhibit G-22, Worksheet #1, 05/29-30/2001, 06/06/2001 and 07/10/2001

Exhibit G-23, Worksheet #3, 05/31/2001

Exhibit G-24, Worksheet #6, 05/31/2001 and 06/01/2001

Exhibit G-25, ATF F 3310.11, Federal Firearms Licensee Theft/Loss Report

Exhibit G-26, Worksheet #4, 05/30/2001

Exhibit G-27, Worksheet #5, 06/01/2001

Exhibit G-28, Worksheet #28, 05/31/2001

Exhibit G-29, ATF F 5030.5, Report of Violations, 06/05/2001

Exhibit G-30, Federal Firearms Regulation Review, 07/10/2001

Exhibit G-31, Warning Letter and Postal Receipts, 07/20/2001

Exhibit G-32, Worksheet #1, 01/14/2004

Exhibit G-33, Worksheet #2, 01/15/2004

Exhibit G-34, Worksheet #3, 01/14/2004

Exhibit G-35, Worksheet #4, 01/14/2004

Exhibit G-36, Worksheet #5, 01/14/2004

Exhibit G-37, ATF F 5030.5, Report of Violations, 03/02/2004

Exhibit G-38, Acknowledgement of Federal Firearms Regulations, 03/02/2004



| | FEDERAL LICENSING SYSTEM | 22-APR-2004 |
|---|---|---|
| | **License Registration Report** | **Time** |
| | | 14:32:33 |

**License Number:** 4  31  113  01  4E  10084

**Application ID:** 236266

**Special Attention Flags**

U  DEMAND LETTER 2

| **Application Type** | **Disposition** | | **Status** |
|---|---|---|---|
| FORM 7 | PENDING RENEWAL APPLICATION | | ACTIVE |

| **Add Date** | **Change Date** | **Original Issue Date** | **Expiration Date** | **Renewal Receive Date** | **Renewal Date** |
|---|---|---|---|---|---|
| 05/29/2001 | 04/06/2004 | 05/29/2001 | 05/01/2004 | 03/29/2004 | 05/29/2001 |

| **Inspection Date** | **Business Type** | **Wholesale Indicator** | **Storage** |
|---|---|---|---|
| 09/30/2002 | | | |

| **Division** | **Area Office** |
|---|---|
| COLUMBUS | CINCINNATI |

| **EIN** | **License/Permittee** | **Business Name** |
|---|---|---|
| 310946897 | FARMER, JAMES THOMAS JR | JIM'S GUNS & WHATEVER |

**Voice Phone:**  (937)429-2606          **Fax Phone:**

**Premises Address**

Street: 1148 RICHFIELD CENTER RD

City: DAYTON          State:  OH   Zip Code: 454300000

County Code: 113   County Name: MONTGOMERY

**Mailing Address**

Street: 1148 RICHFIELD CENTER RD

City: DAYTON          State:  OH   Zip Code: 454300000

**Government Exhibit 1 Page 1 of 3**

**Responsible Person**

| Status | SSN | Last Name | First Name | Middle Name |
|---|---|---|---|---|
| ACTIVE | 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 | FARMER | JAMES | T |

| Title | INS Number | COGENT Number |
|---|---|---|
| OWNER | | |

**Street**
1148 RICHFIELD CTR RD

| City | State | Zip Code | Photo Recd Date |
|---|---|---|---|
| | OH | 454300000 | |

| Date of Birth | Phone Nbr | Birth State | State | State | State | State | Race | Sex | FBI Card Date |
|---|---|---|---|---|---|---|---|---|---|
| 06/18/1948 | 5133292606 | OH | | | | | WHITE | M | |

| CHC Clrnce Status | CHC Clrnce Date | NICS Clrnce Status | NICS Clrnce Date | Relief Status | Relief Date |
|---|---|---|---|---|---|
| PENDING | | PENDING | | | |

**Foreign Address Information**
**Street**

| City | Country | Province | Postal Code |
|---|---|---|---|
| | | | |

**Comment**

Government Exhibit 1 Page 2 of 3

## Comments

| Text | Create Date | Create Userid |
|---|---|---|
| THE STATE CODE FIELDS WERE BLANK, FOR RESPONSIBLE PERSON: FARMER, JAMES T | 09/15/2000 | FEAFIX |
| DEMAND LETTER 2 SENT APRIL 6, 2001 | 04/12/2001 | RGLITTLE |
| DEMAND RECORDS FOR YEAR 2000 RECEIVED 07/23/2001. DEMAND RECORDS FOR 1ST & 2ND QTRS 2001 RECEIVED 07/23/01. | 07/23/2001 | JLMILLS |
| FINAL DEMAND LETTER SENT 7-9-02. DEMAND RECORDS FOR 3RD/4TH 01 & 1ST/2ND 02 - JULY 13, 2002 RECEIVED 7/23/02. | | |
| REMOVAL LETTER·SENT 08/23/2002 | 08/26/2002 | JMFRUSHOUR |
| QQQQ 13(B)=2100 13(C)=2068 | 04/06/2004 | JCOFER |

## Payments

| Control Number | Expiration Code | Transaction Code | Transaction Amount | GLA Date | Check Number |
|---|---|---|---|---|---|
| LI04032909510 | PA | AA | -$90 | 03/29/2004 | 002346 |
| LI01042311133 | 4E | LF | $90 | 04/23/2001 | 001924 |
| LI01042311133 | 4E | AA | -$90 | 04/23/2001 | 001924 |
| LI95203002392 | 1E | LF | $90 | | |
| LI98195032813 | 1E | LF | $0 | | |
| LI95203002392 | 1E | AA | -$90 | | |
| LI98195032813 | 1E | AA | $0 | | |

## Out of Business Info

## Explosives Storage Info

| Storage Type | Street | City | State | ZIP |
|---|---|---|---|---|
| | | | | |

Government
Exhibit 1
Page 3 of 3

DEPARTMENT OF THE TREASURY - BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

**ORIGINAL**

## NOTICE OF REVOCATION OF LICENSE

In the matter of License Number _____ , as

4-31-113-01-4E-10084 as a dealer (01) in Firearms Other than Destructive Devices

, issued to:

NAME AND ADDRESS OF LICENSEE   (Show number. street, city, State and ZIP Code)

James Thomas Farmer, Jr.
d/b/a Jim's Guns & Whatever
1148 Richfield Center Road
Dayton, OH  45430

### NOTICE IS HEREBY GIVEN THAT:

(1)  Pursuant to section 923(d) of Title 18, U.S.C , and for the reasons stated in the page(s) attached to this form, opportunity for hearing have been afforded, the license described above is revoked effective _____ ;

(2)  Pursuant to section 923(f)(2) of Title 18 U.S C., you may file a request with  the Director of Industry Operations, Columbus,        Bureau of Alcohol, Tobacco and Firearms, in duplicate,  within 15 days  after receipt of this notice, for a hearing to review the revocation of your license.

(3)  If you request a hearing, it will be held as provided in 27 CFR Part 478; and

(4)  If your request for a hearing is filed on time, the effective date of revocation of your license will be stayed pending review pursuant to the hearing.

Columbus Field Division
37 W. Broad Street
Suite 200
Columbus, Oh 43215

| Date 8/3/04 | Signature, Director of Industry Operations, Marcia F. Lambert, Director of Industry Operations | District Columbus Field Division |
|---|---|---|

I certify that on the date shown below, I served the above notice on the person Identified below by

☐ Delivering a copy of the notice to him at the address shown below

☒ Certified mail to him at the address shown below

| DATE NOTICE SERVED 8/4/04 | NAME OF PERSON SERVED *(If served on partner or officer of corporation, so state)* James Thomas Farmer, Jr. |
|---|---|

ADDRESS WHERE NOTICE SERVED
James Thomas Farmer, Jr., d/b/a Jim's Guns & Whatever, 1148 Richfield Center Road, Dayton, OH  45430

| DATE 8/4/04 | SIGNATURE OF PERSON SERVING NOTICE Mary L. Cockrell | TITLE Senior  Operations Officer |
|---|---|---|

Government
Exhibit 2
Page 1 of 5