VICTORIA'S
**Transcription**
**Services, Inc.**

29 South LaSalle Street, Suite 200    Chicago, Illinois 60603-1502    toll-free: 877 551 8801    phone: 312 551 8818    fax: 312 443 1029

1

1    UNITED STATES DEPARTMENT OF JUSTICE

2    BUREAU OF ALCOHOL, TOBACCO, FIREARMS

3    AND EXPLOSIVES

4

5    In re:                )

6    JAMES T. FARMER  )

7

8

9

10    REPORT OF PROCEEDINGS

11    FEDERAL FIREARMS LICENSE HEARING

12

13

14    April 21, 2005

15

16

17

18

19

20

21

22

23

**Government Exhibit A**

WE HEAR YOU LOUD AND CLEAR℠    www.VictoriasTranscription.com

2

1                          I N D E X

2    WITNESS                          DX   CX   RDX   RCX

3    JULIE LANTER

4         By Ms. Rybak                11

5         By Mr. Farmer, Jr.               47

6

7    WILLIAM H. SCHMARR

8         By Ms. Rybak                71

9

10   MARILYNN TROMBATORE

11        By Ms. Rybak                93

12

13   DAVID COUNTS

14        By Ms. Rybak                108

15        By Mr. Farmer, Jr.               158

16

17   JAMES T. FARMER, JR.

18        By Ms. Rybak                208

19

20

21

22

23

24

1    HEARING OFFICER:  This is a hearing being

2    conducted under the provisions of Section 923(f)2

3    of Title 18, United States Code, and Section

4    478.74, Title 27, Code of Federal Regulations.

5         The time is 9:55 a.m.  The date is

6    April 21st, 2005.  An audio recording is being

7    made of the proceedings for the record.  The place

8    is No. 200, 37 West Broad Street, Columbus,

9    Franklin County, Ohio 43215.

10        At this time, I will ask the licensee

11   and those present on his or her behalf to state

12   and spell your last name, give your title and your

13   relationship to the hearing.

14        MR. FARMER, JR.:  I'm James Thomas Farmer,

15   Jr.  I'm the license holder.

16        HEARING OFFICER:  Okay.  Could you spell your

17   last name, please.

18        MR. FARMER, JR.:  F-a-r-m-e-r.

19        HEARING OFFICER:  Okay.

20        MR. FARMER, SR.:  I'm James T. Farmer, Sr.

21   I'm his dad.

22        HEARING OFFICER:  Okay.  Could you spell your

23   last name, please.

24        MR. FARMER, SR.:  F-a-r-m-e-r.

1    HEARING OFFICER:  Also present for the

2    government are?

3    MS. RYBAK:  Joyce Rybak, division counsel,

4    R-y-b-a-k.

5    MS. LANTER:  Julie Lanter, inspector,

6    L-a-n-t-e-r.

7    HEARING OFFICER:  I am Desiree Winger,

8    hearing officer.  I'm acting as hearing officer by

9    the direction and under the authority of the Chief

10   of the Firearms, Explosives and Arson Services

11   Division; Bureau of Alcohol, Tobacco, Firearms and

12   Explosives; United States Department of Justice.

13       The hearing is an administrative

14   proceeding and is informal in nature.  This

15   hearing is to review the Notice of Revocation of a

16   License, ATF Form 4500, issued under the

17   provisions of Section 923 of Title 18, United

18   States Code.

19       The license was issued to James Thomas

20   Farmer, Jr., d/b/a Jim's Guns & Whatever, 1148

21   Richfield Center Road, Dayton, Ohio 45430, as a

22   dealer in firearms other than destructive

23   devices.

24       And your position, Mr. Farmer, is the

5

1 owner of the business, correct?

2  MR. FARMER, JR.: Yes, yes.

3  HEARING OFFICER: As a result of the receipt

4 of 4500, you, Mr. Farmer, requested in writing

5 that a hearing be granted. And at this time, I

6 will ask the government to present their case.

7  MS. RYBAK: Thank you.

8  James Farmer, doing business as Jim's

9 Guns & Whatever, 1140 Richfield Center Road,

10 Dayton, Ohio, holds a federal firearms license as

11 a dealer in firearms other than destructive

12 devices, and also as a special occupational

13 taxpayer, which allows him to deal in National

14 Firearms Act weapons.

15  The Gun Control Act provides that the

16 attorney general may, after notice and opportunity

17 for hearing, revoke any license issued under 18

18 USC Section 923 if the holder of the license has

19 willfully violated any provision of Chapter 44,

20 Title 18, United States Code, or any rule or

21 regulation prescribed by the attorney general

22 under the chapter.

23  The licensee, Jim's Guns, was issued a

24 license to engage in the business of dealing in

1    firearms under the provisions of Section 923 of

2    the Gun Control Act in 1968, and has subsequently

3    maintained that license to engage in the business

4    as a dealer in firearms.

5         The government will establish the

6    licensee was instructed in the proper methods of

7    keeping records that are required under Section

8    923(g) of the Gun Control Act, and the licensee

9    has been inspected by Inspector Bill Schmarr and,

10    at that time and previous times, he was instructed

11    as to the proper maintenance of required records.

12         Again, in 1996, the licensee was

13    inspected by Inspector Marilynn Trombatore,

14    instructed on record keeping requirements and

15    reminded his license was conditioned on his

16    maintaining records in a complete and proper

17    manner.

18         He was subsequently inspected in 2001

19    and 2004.  The government will establish that the

20    licensee failed to keep the records as directed.

21    He failed to properly and completely execute ATF

22    Forms 4473, failed to completely and timely enter

23    firearms in his acquisition and disposition

24    record, and failed to timely notify ATF of the

1    theft and loss of firearms.

2           Accordingly, the government will

3    establish that the licensee failed to conduct a

4    NICS check for a disposition of a firearm and

5    failed to enter a firearm into the acquisition

6    disposition record, as well as failing to complete

7    the required acquisition information in certain

8    A and D records.

9           The government will establish these

10   violations were committed willfully and caused the

11   license issued to Jim's Guns & Whatever to be

12   subject to revocation.

13          At this time, the government will move

14   to dismiss Count No. 7 of the notice.  No evidence

15   will be supported -- no evidence will be offered

16   in support of that violation.

17          I have certain preliminary exhibits to

18   offer into evidence prior to calling my first

19   witness.

20   HEARING OFFICER:  Okay.

21   MS. RYBAK:  These are just supporting

22   exhibits for establishing the notice and that type

23   of activity.

24          I offer Government Exhibit 1 into

8

1    evidence. That is a copy of the license that's

2    currently subject to this hearing.

3         HEARING OFFICER: I will accept and enter

4    into the record Government Exhibit No. 1, which is

5    the Federal Licensing System printout for James

6    Thomas Farmer, Jr.

7         MS. RYBAK: I offer Government Exhibit 2,

8    which is the duplicate original of the Notice of

9    Revocation, dated August the 3rd, 2004.

10         HEARING OFFICER: And I will accept and enter

11    into the record Government Exhibit 2, which is the

12    Notice of Revocation of License.

13         MS. RYBAK: I would enter into evidence

14    Government Exhibit 3, which is the certificate of

15    mailing, dated August the 4th, 2004, for the

16    Notice of Revocation, and certificate of receipt

17    dated August the 6th, 2004, for the Notice of

18    Revocation.

19         HEARING OFFICER: I will accept and enter

20    into the record Government Exhibit No. 3, which is

21    the postal receipts.

22         MS. RYBAK: I offer into evidence Government

23    Exhibit 4A, which is the request for hearing,

24    dated August the 6th, 2004, signed by Jim Farmer.

9

1      HEARING OFFICER:  I will accept and enter

2   into the record Government Exhibit No. 4, which is

3   a letter from Mr. Farmer requesting a hearing.

4      MS. RYBAK:  I offer into evidence Government

5   Exhibit 4B, a request for hearing, dated August

6   the 10th, 2004, signed by James Farmer.

7      HEARING OFFICER:  I will accept and enter

8   into the record Government Exhibit No. 4B, which

9   is the letter from Mr. Farmer dated August 10th,

10  2004.

11     MS. RYBAK:  I offer into evidence as

12  Government Exhibit 5, a request for assignment of

13  hearing officer, dated August the 10th, 2004.

14     HEARING OFFICER:  And I will accept and enter

15  into the record Government Exhibit No. 5, which is

16  a request for a hearing officer.

17     MS. RYBAK:  I offer into evidence Government

18  Exhibit 6, which is the Notice of Assignment of

19  Hearing Officer, dated August the 31st, 2004.

20     HEARING OFFICER:  And I will accept and enter

21  into the record Government Exhibit No. 6, which is

22  the assignment of the hearing officer.

23     MS. RYBAK:  I offer into evidence Government

24  Exhibit 7, which is the initial notice of hearing

1    dated December the 9th, 2004.

2         HEARING OFFICER:  And I will accept and enter

3    into the record Government Exhibit No. 7, which is

4    an initial notice of hearing.

5         MS. RYBAK:  I offer into evidence Government

6    Exhibit 8, which is a certificate of mailing dated

7    December the 9th, 2004, for the initial notice of

8    hearing and the certification of receipt, dated

9    December the 14th, 2004, for the notice of

10   hearing.

11        HEARING OFFICER:  And I will accept and enter

12   into the record Government Exhibit No. 8,

13   certificates of mailing for the notice of hearing.

14        MS. RYBAK:  I offer into the record

15   Government Exhibit 9, the hearing acknowledgment

16   dated December the 18th, 2004, signed by James

17   Farmer.

18        HEARING OFFICER:  And I will accept and enter

19   into the record Government Exhibit No. 9, which is

20   the hearing acknowledgment.

21        MS. RYBAK:  Government Exhibit 10 is a -- I

22   offer into evidence is a second notice of hearing

23   dated March the 4th, 2005.  As a note of

24   explanation, the hearing was previously scheduled

1    in January of 2005, and due to an emergency with

2    the government attorney, that hearing had to be

3    rescheduled and this is the rescheduled date.  So

4    this is the second notice of hearing, Government

5    Exhibit 10.

6        HEARING OFFICER:  And I will accept and enter

7    into the record Government Exhibit No. 10, which

8    is the second notice of hearing.

9        MS. RYBAK:  I would offer into evidence

10   Government Exhibit 11, which is the certificate of

11   mailing dated March the 4th, 2005, for the second

12   notice of hearing, and the certificate of receipt

13   dated March the 10th of 2005 for that second

14   notice.

15       HEARING OFFICER:  And I will accept and enter

16   into the record Government Exhibit No. 11, which

17   is the certificate of mailing for the second

18   notice of hearing.

19       MS. RYBAK:  At this time the government would

20   call its first witness, Julie Lanter.  Inspector

21   Lanter, would you please sit here.

22       MS. LANTER:  Sure.

23

24

1                    JULIE LANTER,

2     called as a witness herein, was examined and

3     testified as follows:

4                    DIRECT EXAMINATION

5     BY MS. RYBAK:

6          Q.    Inspector Lanter, will you please state

7     your name for the record and spell it.

8          A.    Sure.  My name is Julie Lanter, last

9     name L-a-n-t-e-r.

10         Q.    And Inspector Lanter, by whom are you

11    currently employed?

12         A.    The Bureau of Alcohol, Tobacco,

13    Firearms and Explosives.

14         Q.    And how long have you been so employed?

15         A.    Since November 2001.

16         Q.    And what is your current post of duty?

17         A.    Cincinnati Area Office.

18         Q.    And your current position?

19         A.    I'm an inspector.

20         Q.    Have you held any previous positions

21    with the bureau?

22         A.    No, I have not.

23         Q.    In your position as inspector, would

24    you describe your duties as pertains to the

1    federally licensed firearms dealers?

2        A.    Sure.  My main duties include

3    conducting compliance inspections of federally

4    licensed firearms dealers and applications for

5    people who would like to obtain a new firearms

6    license.

7        Q.    And as part of those duties, were you

8    assigned to the inspection of Jim's Guns &

9    Whatever?

10       A.    Yes.

11       Q.    And do you remember, approximately,

12   when you received that assignment?

13       A.    December 2003.

14       Q.    Did you actually conduct an inspection?

15       A.    Yes, I did.

16       Q.    And do you remember when you did

17   conduct that inspection?

18       A.    I conducted the inspection from January

19   14th through the 28th, 2004, with three follow-up

20   visits in February of 2004, and a closing

21   conference March 2004.

22       Q.    And did you conduct this inspection

23   with anyone?

24       A.    No, by myself.

14

1  Q.  And would you describe how you prepare

2  to conduct an inspection.

3  A.  Sure.  The first thing I'll do is check

4  the -- see if there are any special instructions

5  from my supervisor, check the assignment itself.

6  I will look at the licensee's area office file to

7  look at previous compliance inspection reports.  I

8  will look at the current license under the federal

9  licensing system database to make sure that they

10  have a current valid license.

11        I'll conduct a text query on the

12  licensee to see if any prohibiting information has

13  come up.  I will review a program called Online

14  Lead to see if the licensee has reported any

15  stolen firearms, any multiple sales of handguns,

16  if they've had any firearms traced to them, and

17  then, of course, make any directions and hours and

18  that sort of thing.

19  Q.  Then what do you do?

20  A.  Then, generally, the inspections are

21  unannounced, so I show up and start the

22  inspection.

23  Q.  Was that true in this case?

24  A.  Yes.

1    Q.    Turning your attention to this

2    particular inspection, what type of inspection was

3    this?

4    A.    It was a compliance inspection.

5    Q.    And what type of license did Mr. Farmer

6    hold at this time?

7    A.    He had a Type 01 license, a dealer in

8    firearms other than destructive devices, and he

9    also was a special occupational taxpayer.

10    Q.    And what business activity do those --

11    does that license and tax stamp allow him to do?

12    A.    The license allows him to deal in

13    firearms other than destructive devices, and the

14    tax stamp allows him to deal in firearms that fall

15    under the purview of the National Firearms Act.

16    Q.    Do you recall, approximately, how long

17    Mr. Farmer has held a license with ATF?

18    A.    I believe it's been since about 1968.

19    MR. FARMER, JR.:  Well, actually, I was at my

20    store location from 1978, but I had had -- my dad

21    had had a Crossroads Sports Center, and then

22    about, let's see, '68, I got involved with some

23    friends with reloading, which needed a license at

24    the time, and that was under the name CBR

1    Laboratories, and so I'd say off and on from '68,

2    but in this location, from this license '78, so --

3    not wrong, but more information, right?

4    BY MS. RYBAK:

5         Q.    What period did this inspection cover?

6         A.    It covered September 2002 until the

7    current date, January 2004.

8         Q.    And who was on the premises when you

9    conducted the inspection?

10        A.    Mr. Farmer, Jr.

11        Q.    And did you deal with him exclusively?

12        A.    Yes.

13        Q.    I hand you what has been marked as

14   Government Exhibit 32, can you identify that,

15   please.

16        A.    Sure.   It's Work Sheet 1, Business

17   Profile, that I completed and submitted with this

18   assignment.

19        Q.    During your inspection, did you

20   determine the volume of business that the licensee

21   had conducted during that period of inspection?

22        A.    Yes, I did.   During the previous 12

23   months, the licensee had acquired 668 firearms and

24   disposed of 920 firearms.

17

 1      MS. RYBAK:  Government would offer Government

 2  Exhibit No. 32 into evidence, please.

 3      HEARING OFFICER:  I will accept and enter

 4  into the record Government Exhibit No. 32, which

 5  is Work Sheet 1, Business Profile.

 6  BY MS. RYBAK:

 7      Q.    I'd like to turn your attention to the

 8  federal firearms licensee's required records, what

 9  did you examine when you were on the licensed

10  premises?

11      A.    I examined the licensee's Forms 4473, I

12  examined his acquisition and disposition bound

13  books, and multiple handgun sale reports.

14      Q.    And did you conduct any kind of

15  inventory when you were on the premises?

16      A.    Yes, I did a full inventory.

17      Q.    And could you describe how a full

18  inventory is conducted.

19      A.    Sure.  I might do it a little bit

20  differently depending on how the business is set

21  up, but what worked in this case was, for the most

22  part, Mr. Farmer has a tag on each firearm that

23  has a number on it that corresponds to the entry

24  of that firearm in the logbook.

1          And so I went down through each firearm
2    and looked up the corresponding number in the
3    logbook and checked it off if it matched and if it
4    was appropriately entered in the book. So I went
5    through the whole store that way.
6          And then when I was finished, I had a
7    list of -- actually two lists. One list of
8    firearms that I found in inventory, but I couldn't
9    find in the book, and then I had another list of
10   firearms that were in the book as being open
11   dispositions, meaning they should have been in
12   inventory, but I didn't find them in inventory.
13        Q.    I hand you what has been marked as
14   Government Exhibit 33. Could you identify that,
15   please.
16        A.    Sure.  That's Work Sheet No. 2
17   Inventory that I completed and submitted with this
18   assignment.
19        Q.    And when you conducted the inventory
20   that you've just described, how many firearms did
21   you actually find in the inventory?
22        A.    Initially, I found 890.
23        Q.    And did you review the licensee's
24   acquisition and disposition record?

1       A.    Yes.

2       Q.    And how does he maintain those?

3       A.    I'm not sure what --

4       Q.    Does he maintain them in particular

5    books or --

6       A.    Yes, yes.

7       Q.    Like with one large book or how does he

8    maintain those?

9       A.    Oh, no, it's several books, actually,

10   they're --

11      MR. FARMER, JR.:  (Inaudible.)

12   BY THE WITNESS:

13      A.    -- in different bound notebooks.

14   BY MS. RYBAK:

15      Q.    And is the acquisition disposition

16   record a required record under the Gun Control

17   Act?

18      A.    Yes, it is.

19      Q.    And does the Gun Control Act set forth

20   how those records are to be maintained?

21      A.    Yes.

22      Q.    Do you happen to remember the

23   regulation involved?

24      A.    Sure.  The regulation is

1    27 CFR 478.125(e).

2        Q.    And you examined the record based on

3    the requirements of that regulation; is that

4    correct?

5        A.    Yes.

6        Q.    What, if any, discrepancies did you

7    find when you did your inventory and your

8    acquisition disposition record review?

9        A.    Well, like I previously stated, I found

10   -- initially found 890 firearms in inventory, but

11   the log books indicated to me that there should

12   have been 1,039 firearms in inventory.

13       Q.    And how long does a licensee have to

14   record acquisitions and dispositions in his

15   acquisition disposition record?

16       A.    Licensee has until the end of the next

17   business day to record acquisitions, unless they

18   have commercial records which contain all the

19   information required under the regulations, in

20   which case they have seven days.  And they have

21   seven days to record dispositions.

22       Q.    From the date of the sale --

23       A.    Yes.

24       Q.    -- to record?