IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| JAMES THOMAS FARMER JR., : <br> d/b/a Jim's Guns & Whatever, <br> : <br> Plaintiff, : Case No. 3:05CV287 <br> : <br> vs. : District Judge Walter Herbert Rice <br> : Magistrate Judge Sharon L. Ovington <br> BUREAU OF ALCOHOL, TOBACCO, <br> FIREARMS AND EXPLOSIVES, : <br> : <br> Defendant. : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Plaintiff was a licensed firearms dealer doing business in Dayton, Ohio as Jim's Guns & Whatever until the federal government revoked his firearm license.  *See* Doc. #1, Government Exhibit D.  This occurred on June 16, 2005, after various administrative proceedings, when the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("Defendant ATF") issued a Final Notice of Revocation of Plaintiff's firearm license due to his willful violations of the Gun Control Act of 1968.  *See id*.  The Final Notice detailed Plaintiff's repeated violations – in 1995, 1996, 2001, and 2004 – of the Gun Control Act's record-keeping requirements.  *See id*. at 3-6, 9  The Final Notice concluded in part:

> [T]he record demonstrates that the Licensee [Plaintiff] has been plainly indifferent to, and in some instances has acted in purposeful disregard of, these

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

record keeping requirements.

*Id*. at 9.

Plaintiff brings this case *pro se* challenging Defendant ATF's revocation of his firearm license. Plaintiff does not seek monetary damages; he instead seeks an Order directing the United States Attorney General and Defendant ATF to reverse the revocation of his firearm license. (Doc. #1 at 10).

The case is before the Court upon Defendant ATF's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the Alternative, Motion for Summary Judgment. (Doc. #2), Plaintiff's Memorandum in Opposition (Doc. #5), Defendant ATF's Reply (Doc. #7), and the record as a whole.

## II.	PLAINTIFF'S COMPLAINT

Plaintiff's Complaint requests a *de novo* judicial review of the revocation of his federal firearm license. Plaintiff alleges that Defendant ATF wrongly revoked his firearms license, because he did not willfully fail to comply with the regulatory requirements of the Gun Control Act. (Doc. #1 at 7). Plaintiff's Complaint alleges that Defendant ATF erred in finding that he failed to comply with the Gun Control Act's registration requirements. He attempts to show his compliance by pointing out that he recorded over 17,000 firearm acquisitions on more than 15,000 ATF form 4473s. *Id*. He asserts, in part, "I submit that they constitute massive evidence that I was trying to fulfill my recordskeeping [sic] requirements. The reason I got so far behind in 2001 was that the shop and its demands on me grew as my health deteriorated."

Plaintiff's Complaint further describes his efforts to comply with the Gun Control Act. He, however, only specifically contests one of the violations against him. He asserts that on one

occasion the investigator used the wrong method to identify a gun. This, according to Plaintiff, made it appear that a gun was missing when it was in fact present in his inventory. (Doc. #1 at 4-5).

Plaintiff maintains that Defendant ATF did not complain about his use of industry-standard abbreviations or his "referencing suppliers to a previous stock number, or just the Name & 'FFL on File' when [he] had the FFL on file. After 9/11/2001 and the transfer of BATF from Treasury to Justice, a new more hard-line trend became evidence. I believe I became a victim of rapid rule changes and possibly got a reputation as a trouble-maker & undesirable dealer due to little real intent and certainly no advantage or profit to me." (Doc. #1 at 9).

### III. DEFENDANT ATF'S MOTION TO DISMISS

#### A. The Gun Control Act and Rule 12(b)(1)

The Gun Control Act permits Plaintiff to challenge the final revocation of his firearm license by filing a Petition in this Court within sixty days after the notice of revocation was given. 18 U.S.C. §923(f)(3).

Defendant ATF seeks dismissal of Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) due to lack of subject matter jurisdiction because he failed to file his Complaint within sixty days after he received the Notice of Final Revocation of his firearm license. Defendant ATF contends, "A motion to dismiss a civil action for review of the Secretary of Treasury's decision to deny or revoke a Federal firearm licence pursuant to 18 U.S.C. §923 must be granted for lack of subject matter jurisdiction if the petitioner fails to file suit within the sixty-day period prescribed by 18 U.S.C. §923(f)(3)." (Doc. #2 at 19). In support of this jurisdictional contention, Defendant ATF relies on two unpublished cases: *Charles Monroe Smith d/b/a*

3

*Wholesale Gun Distributor v. Joseph D. Devincy, Regional Admin. Bureau of Alcohol, Tobacco and Firearms*, No C70-620A (N.D. Ga. Sept. 14, 1979); *Alvin B. Stokes v. United States of America and Rex D. Davis, Acting Director, Alcohol, Tobacco and Firearms Division*, No. 21-C-10-H (W.D. Va. Apr. 16, 1971). (Doc. #2 at 19). Defendant ATF has not provided the Court with copies of these two unpublished cases and has not included citations to an electronic database or other source where these cases can be found. Consequently, Defendant ATF's reliance on these cases does not resolve whether Gun Control Act's sixty-day time limit is jurisdictional.

Defendant ATF also reasons that time limits involving suits against the sovereign are generally jurisdictional (Doc. #2 at 18 (citing *Ohio National Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990)), and similarly that time limits applicable to obtaining judicial review of administrative actions are generally "'mandatory and jurisdictional' and 'not subject to equitable tolling.'" *Stone v. I.N.S.*, 514 U.S. 386, 405 ... (1995)...." (Doc. #2 at 19). Plaintiff does not address these jurisdictional arguments. *See* Doc. #5.

A review of the cases relied on by Defendant ATF confirms, in general, the jurisdictional nature of time limits for seeking judicial review of administrative actions. *See Stone*, 514 U.S. at 405; *see also Ohio National Life Ins. Co.*, 922 F.2d at 324. There appears little reason not to apply this general jurisdictional approach to the specific sixty-day time limit in the Gun Control Act's sixty-day time limit. However, caution is needed because the import of these jurisdictional arguments may be eluding Plaintiff, who is proceeding *pro se*, and whose brief does not subject Defendant ATF's jurisdiction arguments to scrutiny they deserve. This in turn deprives the Court of the benefits normally flowing from the crucible of adversarial testing.

4

The Court's research, moreover, does not reveal a published case by the United States Courts of Appeals for the Sixth Circuit, or another Circuit Court of Appeals, directly holding that the Gun Control Act's sixty-day filing requirement is jurisdictional. As a result, although Rule 12(b)(1)'s standards for determining whether the Court has subject matter jurisdiction should apply to Defendant ATF's present Motion to Dismiss, this application should not be read as a broader holding that Rule 12(b)(1) will always apply to resolve whether a plaintiff has timely filed a case in District Courts pursuant to the Gun Control Act, 18 U.S.C. §923(f)(3).

### B. Standards Under Rule 12(b)(1)

In considering whether to dismiss a Complaint under Fed. R. Civ. P. 12(b)(1) due to the lack of subject matter jurisdiction, the plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).

A Rule 12(b)(1) Motion can be based on a "facial" attack or a "factual" attack upon the Complaint. *Singleton v. United States*, 277 F.3d 864, 869 n.4 (6th Cir. 2002). If the Motion attacks the assertion of subjection matter jurisdiction raised in the face of the Complaint, the Court accepts the Complaint's allegations as true and construes them in the light most favorable to the non-moving party. *United States v. A.D. Roe Co., Inc*. 186 F.3d 717, 721-22 (6th Cir. 1999)(citing *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994)).

When a Rule 12(b)(1) Motion attacks the factual basis for subject matter jurisdiction, this Court is "empowered to weigh the evidence and no presumptions apply as to the truthfulness of the [Plaintiff's] allegations." *A.D. Roe Co., Inc*. 186 F.3d at 722. This Court can thus resolve factual disputes underlying the challenge to subject matter jurisdiction, *see Madison-Hughes v.*

5

*Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996), and in doing so, the "trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. Pro. 56." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). This power arises from the authoritative nature of subject matter jurisdiction, as the Court of Appeals for the Sixth Circuit explains

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*RMI Titanium Co.*, 78 F.3d at 1134.

Defendant ATF raises a factual attack on Plaintiff's assertion of subject matter jurisdiction by relying on evidence outside the Complaint to support its contentions regarding when Plaintiff was given notice of the Gun Control Act's sixty-day filing requirement. *See* Doc. #2 at 19. The analysis thus turns to the evidence and factual issues regarding when Plaintiff received such notice.

### C. **Plaintiff's Complaint Is Untimely**

A review of the administrative proceedings concerning the revocation of Plaintiff's firearm license will illuminate when Plaintiff was given notice of the final revocation of his firearm license.

On August 3, 2004, Defendant ATF issued to Plaintiff a Notice of Revocation of License. (Doc. #2 at Exh. 2). This Notice informed Plaintiff about his right to file a timely request for a hearing, which he did. *Id.*, Exhs. 4(A) and 4(B). Defendant ATF scheduled a hearing and

advised Plaintiff that he could be represented by counsel and present evidence during the hearing. *Id*. at Exhs. 7-11.

On April 21, 2005, Defendant ATF held an administrative hearing before a Hearing Officer. Plaintiff, along with his father, attended the hearing and presented evidence including his own testimony. *Id*., Exh. A. The government was represented by counsel, who presented documentary evidence and the testimony of three investigators with Defendant ATF. Plaintiff was given an opportunity to cross examine each government witness. He cross examined two of the three investigators.

At the end of the hearing, the hearing officer spoke with Plaintiff about the Gun Control Act's sixty-day time limit as follows:

> Hearing Officer: The DIO, Director of Industry Operations, Bureau of Alcohol, Tabacco, Firearms and Explosives will make the final decision on your so license based on this hearing. If the decision is that the license is not to be revoked, you will receive a written notice that she has made that decision.
>
> In the event the DIO reaches a decision that your license is to be revoked, you will receive a Final Notice of Revocation of License on ATF Form 4501 and a copy of the findings and conclusions of the DIO.
>
> If you do receive a Final Notice of Revocation on ATF Form 4501, you may file a request in federal district court where you conduct business under the provisions of 923(f)3, Title 18, United States Code, for a de novo hearing. Okay, so even if the DIO decides to revoke your license, you still have another opportunity if you choose to take it.
>
> [Plaintiff]: In district court.
>
> Hearing Officer: In district court.
>
> Hearing Officer: This request is to submitted within 60 days of your receipt of the form AFT Form 4501. Okay?

7

| | | |
|---|---|---|
| [Plaintiff]: | | Within 60 days of Notice of Revocation. |
| Hearing Officer: | | After you receive the final notice, you've got 60 days to file in court, in district court |

* * *

| | | |
|---|---|---|
| Hearing Officer: | | You have 60 days once you receive that final notice to file in court, in district court. |
| [Plaintiff]: | | Okay.... |

(Doc. #2, Exh. A at Tr. 221-23). Plaintiff's acknowledgment of the Hearing Officer's explanation leaves no doubt that he knew on April 21, 2005 about the Gun Control Act's sixty-day time limit. *See id*. Interestingly, Plaintiff's father expressed his understanding of the significance of the time limit by stating, "You ain't going to push the envelope on that." *Id*. at 223. In response, Plaintiff stressed his understanding of the time requirement by stating that if he received a Final Notice of Revocation, he "might turn around that within 24 hours." *Id*.

Although Plaintiff knew about the Gun Control Act's sixty-day time limit on April 21, 2005, he had yet to receive either the Hearing Officer's Report or a Notice of Final Revocation. At some point after the hearing, the Hearing Officer issued a lengthy and detailed written Report and Recommendation Concerning Notice of Revocation. *Id*., Exh. C. The Hearing Officer concluded that Plaintiff's firearm license should be revoked due to his willful violations of the Gun Control Act. *Id*. Plaintiff timely appealed this Report to the DIO. *Id*., Exh. C.

On June 16, 2005, the DIO issued her decision revoking Plaintiff's firearm license. *Id*., Exh. D. The Final Notice of Revocation of Firearms License was served on Plaintiff soon thereafter on June 23, 2005. *Id*. The Final Notice specifically informed Plaintiff of the following:

8

>If you are dissatisfied with this action you may, within 60 days after receipt of this notice, file a petition pursuant to section 923(f)(3) of Title 18, U.S.C., for judicial review with the U.S. District Court for the district in which you reside or have your principal place of business.

*Id*. at 1. A certified mail receipt confirms that Plaintiff received the Final Notice of Revocation on June 23, 2005.

The record thus conclusively establishes that Plaintiff received the Final Notice of Revocation on June 23, 2005, and at this time – indeed well before (as early as the administrative hearing in April 2004) – he knew about the Gun Control Act's sixty-day time limit for filing a judicial action in District Court. Plaintiff was therefore required to file his present case by August 24, 2005 but failed to do so. Although he filed it *pro se* only one day late, on August 25, 2005, this was outside the specific time requirement of the Gun Control Act, 18 U.S.C. §923(f)(3), of which he had known about for more than sixty days. His Complaint is therefore untimely. *Cf. McNeil v. United States*, 508 U.S. 106, 113 (1993)("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel. As we have noted before, 'in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" (quoting in part *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) (footnote omitted)).

Plaintiff asserts that he believed he was only required to file his request for judicial review with Defendant ATF, which he did in a timely manner. Plaintiff contends that Defendant ATF did not alert him to the need to file a Complaint in this Court until August 18, 2005, only five days before the expiration of the sixty-day time limit. (Doc. #5 at 3). Plaintiff thus contends that Defendant ATF effectively gave him only five days to file his judicial Complaint.

These contentions fail to eliminate Plaintiff's time problem first because the Hearing Officer specifically told Plaintiff, "You have 60 days once you receive that final notice <u>to file in court, in district court</u>." (Doc. #2, Exh. A at 223 (emphasis added)). Plaintiff acknowledged his understanding of this. *Id*.

The Final Notice of Revocation also specifically informed Plaintiff that he had the right under 18 U.S.C. §923(f)(3) to file a case within sixty days of receiving the Final Notice of Revocation – not with the Defendant ATF, as Plaintiff apparently believed, but – "with the U.S. District Court for the district in which you reside or have your principal place of business." (Doc. #2, Exh. D). There is nothing in this Notice suggesting to Plaintiff that he could effect a further challenge, judicial or administrative, of the revocation of his license by notifying or emailing Defendant ATF of his desire to do so. *See id*.

Plaintiff also explains, "I feel that I've been very diligent in pursuing my rights, pursuing every avenue in the course of attempting to explain and justify my position and to retain my license and sole livelihood in what I feel is my best chance to present my views, explanations and evidence." (Doc. #5 at 4). To the extent this, and Plaintiff's Memorandum in Opposition, attempts to establish equitable reasons for not enforcing the sixty-day time limit against him, Plaintiff has not shown that equitable estoppel should excuse his failure to file a timely case in this Court. Equitable tolling is a unique remedy that is applied sparingly. "Typically equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art Inc.,* 209 F. 3d 552, 560-61 (6th Cir. 2000). Only unique circumstances warrant the application of equitable tolling. *Baldwin County Welcome Center v. Brown*, 466

U.S. 147 (1984). Such circumstances include: where the court has led a plaintiff to believe that he had done everything required or where affirmative misconduct on the part of the defendant lulled the plaintiff into inaction. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147 at 151 (1984). In *Baldwin* the Supreme Court found that when the plaintiff was told three times what she needed to do to preserve her rights and she did not, equitable tolling did not apply. *Id*. Similarly, in the present case, Plaintiff was specifically informed on at least two occasions about the applicable sixty-day filing deadline, and of the need to file his Complaint in U.S. District Court. Plaintiff was not informed that he could pursue further administrative relief with Defendant ATF. The record thus does not contain any evidence indicating that Plaintiff was misled by the Hearing Officer or by Defendant ATF into seeking further administrative relief rather that filing a timely judicial Complaint in this Court. Indeed, the fact that Plaintiff mistakenly believed that an email to the ATF would satisfy the judicial-filing requirement was not based on some action by Defendant ATF, which on the contrary, provided him with specific notice in April 2005 (through the Hearing Officer) and again on June 23, 2005 (through the DIO) of the judicial-filing requirements. Under these circumstances, equitable estoppel does not nullify the untimeliness of Plaintiff's Complaint.

Accordingly, Defendant ATF's Motion to Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) is well taken.

**IV.  DEFENDANT ATF'S ALTERNATIVE
        MOTION FOR SUMMARY JUDGMENT**

Defendant ATF contends that it is entitled to summary judgment on Plaintiff's challenge to the revocation of his firearm license because the undisputed material facts show that Plaintiff

11

willfully violated the provisions of the Gun Control Act.

The central issue presented by a Motion for Summary Judgment is a threshold issue – whether the case presents a proper jury question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A moving party is entitled to summary judgment in its favor if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson*, 477 U.S. at 247.

"The burden placed upon the movant for summary judgment is to show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden at trial." *Guarino v. Brookfield Tp. Trustees,* 980 F.2d 399, 403 (6th Cir. 1992); *see Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). If the movant makes this showing, the non-moving party may not rely on the bare allegations of the Complaint but must present affirmative evidence in support of his or her claims. *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994); *see Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992); *see also Street*, 886 F.2d at 1479-80.

Because Plaintiff is proceeding *pro se*, the Court must construe his Complaint liberally in his favor. *Black v. Parke*, 4 F.3d 442, 448 (6th Cir. 1993). The Court, however, is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id*. at 404; *see InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989); *see also Street*, 886 F.2d at 1479-80. Rather, the burden falls on Plaintiff at this stage of the litigation to designate specific facts or evidence in dispute. *Anderson*, 477 U.S. at 250; *see Adams*, 31 F.3d at 379; *see also Guarino*, 980 F.2d at 404-05; *Street*, 886 F.2d at 1479-80.

Ultimately, the Court must determine at the summary-judgment stage whether the evidence presents a sufficient factual disagreement to require submission of the challenged claim or claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52.

The Gun Control Act, 18 U.S.C. § 923(e), permits Defendant ATF to revoke a federal firearm license if the holder has "willfully" violated its provisions or accompanying Regulations. "The majority of circuits, including the Sixth Circuit, have consistently held that where a licensee understands his or her legal obligations under the [Gun Control Act], yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the licensee 'willfully' violated the [Gun Control Act]." *Appalachian Resources. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004).

Undisputed knowledge of the Gun Control Act provisions and a failure to abide by them constitutes willfulness. *Appalachian Resources*, 387 F.3d 465. Proof of bad intent or evil motive is not needed to establish a willful violation of the Gun Control Act, 18 U.S.C. § 923(e). *Appalachian Resources Development Corp.*, 387 F.3d at 465. Furthermore, a single violation of the Gun Control Act, or its Rules and Regulations, can be a basis to revoke a firearm license. *Id*. at 464. While evidence of repeat violations is not necessary to establish willfulness, such evidence can be sufficient to establish willfulness if there is also knowledge of the law's requirements. *Id*.

Plaintiff was made aware of his Gun Control Act violations beginning in 1995 when he was cited for failure to furnish the contents of ATF Form 5300.35 and for failure to properly complete ATF Forms 4473. At the conclusion of the 1995 inspection, the investigator explained

the violations to Plaintiff and reviewed with him the proper procedure to complete the required AFT Forms. (Doc. #2, Exh. at Tr. 90). Plaintiff was also issued a warning letter, which explained that repeat violations are viewed as willful and can result in license revocation. (Doc. #2, Exh. 13).

In 1995, as a result of another inspection, Plaintiff was cited for four violations including improper ATF Forms 4473 and improper inventory record keeping. He was not issued a written report but the investigator explained the violations noted and the required corrections and remedial actions to comply with the GCA. (Doc. #2, Exh. 21; Exh. A at Tr. 107-08).

A 2001 inspection revealed seven Gun Control Act violations, three of which were repeat violations including failure to properly complete ATF Forms 4473, improper NICS checks, and improper inventory record keeping. Plaintiff was cited for these violations. (Doc. #2, Exh. 29; Exh. A at Tr. 153-55). The investigating officer explained the violations, and Plaintiff was again issued a warning letter advising him that repeat violations would be viewed as willful and could result in the revocation of his license. (Doc. #2, Exh. D).

An inspection in 2004 revealed six violations, five being repeat violations including improper ATF Forms 4473, improper NICS checks, and improper inventory record keeping. *Id*.

In light of the above evidence of record, there is no genuine issue regarding Plaintiff's repeated violations of the Gun Control Act in 1995, 1996, 2001, and 2004, despite being told how – and hence having knowledge of the need – to correct the violations. Plaintiff was told how to comply with the Gun Control Act each time he was cited for a violation. There is no evidence from which a reasonable jury could conclude that Plaintiff did not understand the requirements of the Gun Control Act throughout this period. Because it is undisputed that

Plaintiff knew about the requirements of the Gun Control Act and that despite his knowledge, he repeatedly violated the Gun Control Act's recording requirements, he willfully failed to comply with the Gun Control Act.

In addition, at the administrative hearing in April 2005, Plaintiff acknowledged that he and his employees made record-keeping errors. (Doc. #2, Exh. A, Tr. at 62, 197, 201, 210, 211, 224). He also admitted to "not having records up to snuff, things slipping through the cracks, omissions of booking things out..." *Id.* at 211. Consequently, there is no genuine issue regarding the conduct that resulted in violations of the Gun Control Act as described in detail by the Hearing Officer in her Report and the DIO in her Decision resulting in the Final Notice of Revocation of Plaintiff's firearm license.

Plaintiff contends that his violations were not committed willfully, because he lacked any bad intent. Yet, as discussed earlier, a willfulness violation of the Gun Control Act does not require evidence of bad intent or evil motive. *See Appalachian Resources*, 387 F.3d at 465. The fact that Plaintiff repeatedly violated the Gun Control Act despite his knowledge of its recording requirements is sufficient to establish willfulness. Plaintiff, moreover, does not point to affirmative evidence in the record indicating that he was not aware of the requirements. Although he offers several explanations why the violations occurred – for example, he asserts that he was unable to properly follow the Gun Control Act requirements due to his declining health and the burdensome demands of his business (Doc. #1 at 5-6) – his explanations do not eliminate the undisputed facts that he knew about the Gun Control Act's recording requirements, that Defendant ATF's inspections had discovered numerous Gun Control Act violations, and that he was informed about these violations but repeatedly continued to commit similar violations.

Accordingly, because the record contains no genuine issue of fact over whether Plaintiff's repeated violations of the Gun Control Act were willful, Defendant ATF's Motion for Summary Judgment is well taken.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendant's Motion to Dismiss (Doc. #2) be GRANTED;

2. Defendant's Alternative Motion for Summary Judgment (Doc. #2) be GRANTED;

3. Plaintiff's Complaint be DISMISSED; and

4. The case be terminated on the docket of this Court.


July 17, 2006

    s/ Sharon L. Ovington
    Sharon L. Ovington
    United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985)